CURTIS AND WILKINS *v.* CISNA'S ADMINISTRATORS.

*Judgment at Law—Assignee—Equity.*

Questions litigated and decided in an action at law can not, as of course, be re-examined in equity.

Assignee of an agreement concluded in equity by decision at law against his assignor.

THIS case was reserved for decision here in the county of Knox. It is charged in the bill, that the complainant, Wilkins, being owner of a tract of land in the county of Knox, on the 11th of May, 1816, contracted to sell it to Thomas Cisna, since deceased. That seventy sheep were delivered by Cisna upon account of the purchase money, and a written agreement entered into, by which Wilkins agreed to convey *the land to Cisna, on or before [430 the 1st day of September ensuing, upon Cisna then paying $100, and securing to be paid by his own bonds, and a mortgage on the lands, the further sums of $150, payable 1st of April, 1817; $100, 1st of April, 1818; and $100, 1st of April, 1819. That the con- tract was made and executed, and deposited for safe keeping, at Mount Vernon, where, complainant understood, the parties were to meet on the 1st of September to carry it into effect. The bill further charged, that Wilkins attended at Mount Vernon on the day to execute the contract, but that Cisna did not attend. That on the 7th of September, Wilkins executed a deed to Cisna for the land, and shortly afterward caused it to be tendered to Cisna,

at his residence in Fairfield county, and required of him to perform his part of the agreement, when Cisna refused to receive the deed, or to comply with the contract. That a subsequent tender of the deed was made to Cisna, at Mount Vernon, who again neglected to perform on his part. That Wilkins being pressed for money, about the 1st of February, 1817, assigned his contract with Cisna to Silliman and Curtis, and entered into an agreement with them, that they should use his name to enforce the contract with Cisna, they to indemnify him against any claim of Cisna, and delivered to them the deed executed for Cisna; at the same time a deed for the lands from Wilkins to Silliman and Curtis was executed and delivered to them. The bill further alleged, that Cisna was notified of the transaction, and again requested to accept the deed, and perform the contract, but did not do it; that Silliman afterward transferred his right to Curtis, who was at all times ready, willing, and able to perform the contract on his part; that while the contract remained unexecuted, Cisna deceased, and his administrators brought an action against Wilkins to recover back the value of the property received by Wilkins on the contract; that upon this trial a recovery was had against Wilkins, in consequence of the defendant not being able to prove a tender of the deed at the day, and in consequence of a defect in the proof of the chain of title at the trial. The bill prays an injunction against the judgment at law, and that the administrators of Cisna may be compelled to accept the conveyance, and pay the money.

431] *The answer denies all knowledge of the facts set out in the bill, and calls for proof. It insists that Wilkins having conveyed to Silliman and Curtis, Cisna, or his representatives, are not bound to take from them a deed; and it sets up and relies upon the trial at law as concluding the rights of the parties under the contract, which ought not to be re-examined in equity.

The proofs substantially sustain the allegations in the bill, except that there is no testimony of Wilkins' being at Mount Vernon to complete the contract on the 1st of September. The written contract between Wilkins and Silliman and Curtis, by which Cisna's contract was assigned to the latter, contained the following reference to the contract with Cisna in describing the land: Being the same that Wilkins " had contracted to sell to one Thomas Cisna, and *which contract has since fallen through in consequence of Cisna's not complying with his part.*"

CURTIS, for the complainants :

The trial and judgment at law evidently constitutes the main ground of the defense ; and this can not prevail either upon principle, or upon authority.

Had the interest remained in Wilkins, and should he bring an action on the contract against Cisna's administrators, could they plead the judgment in bar, or give it in evidence to defeat a recovery ? Upon an executory contract, containing mutual stipulations, both parties may sustain actions at law, and a resort to equity may at last be necessary to do justice between them. Cisna may recover damages for the non-conveyance ; Wilkins may recover the purchase money ; and neither could plead his own recovery in bar to the action of the other ; yet there might be such inequality in the different amounts rendered by different juries, perhaps in different tribunals, or such other circumstances might attend the recoveries as to occasion gross injustice, did the mere fact of a judgment at law preclude all inquiry by a court of equity.

In the case of Rees *v.* Smith, 1 Ohio, 124, decided by this court at the last term, the complainant had actually prosecuted an action at law upon the same contract against the defendant; a trial was had upon the merits, and a verdict *and judg- [432 ment against him. So far from regarding this as conclusive upon him, the court treat it as a strong ground for extending to him the aid of a court of chancery. " We can not," say the court, " shut our eyes on the fact, that the remedy at law has been extinguished by a judgment rendered against the complainant, by a court of competent jurisdiction, *on the ground alleged by the defendant, that Solomon Rees had not complied with his contract.*" " The accidental circumstance that the complainant's remedy at law has been destroyed by the practice of the defendant, ought *rather to strenghten than to weaken his claim to the aid of this court.*"

Here the complainant himself had resorted to an action at law : he was defeated because he had not *complied on his part* so as to entitle him to sue at law ; yet this did not close against him a court of equity. Certainly the same consequence must fairly result from an unavailing attempt to sustain a defense at law, for the *same reason* adjudged untenable.

There is another reason why the proceedings at law can not

439

be set up as a bar to this suit—the person in whom the *real substantial interest* was vested, was not a party to that proceeding.

Long before the commencement of the suit, the beneficial interest in the contract had been fairly transferred to Silliman and Curtis, and of this Cisna had full and complete notice.

Oh this point two propositions are insisted upon :

1. A court of equity will always protect the rights of a *bona fide* assignee to a chose in action.

2. A party having notice that his contract is assigned, in equity, can not, by any act of his own, or by any concert with the other original party, defeat or impair the rights of the equitable assignee.

The first position is asserted by the elementary writers, is sustained by the adjudged cases, and is contained in all books of reference and practice.

Blackstone, in his Commentaries, vol. 2, p. 442, distinctly asserts it; so does Powell, in his treatise on Contracts, vol. 1, p. 317. It is laid down in 1 Bacon, 249, and various authorities cited.

**433]** *The second proposition can not be separated from the first; it is a necessary consequent. In Martin *v.* Harris, 2 Term, 595, an administratrix claimed to appropriate moneys arising upon an assigned agreement for wages, to pay off a judgment against the assignor, but the court would not permit her. The money was secured to the assignee. If the obligor pay money on a bond, though not assignable after notice of an assignment, he shall pay it again to the assignee. 2 Ver. 540 ; Chan. Cases, 232. If a debt or other chose in action be assigned, and the assignor release to the debtor, who has notice of the assignment, it can not affect the assignee. Ch. Cas. 169.

The direct acts of the parties to a contract can not impair the rights of an assignee. Can these rights be impaired by any indirect proceeding? The release of the assignor avails nothing. Payment by the obligor to the obligee avails nothing ; a judicial decision between them can not be more operative.

When the administrators of Cisna commenced their suit against. Wilkins, they knew he had no interest in the contract, upon the operation of which their right of recovery depended. No act of his, out of court, could avail anything; how, then, could he do anything in court by which the contract could be touched? Would Wilkins' default bind Curtis? Would his confession change

the rights of the parties ? Could he by pleading compromit interests otherwise beyond his reach ? It is certainly clear that the interests of Curtis were as incapable of being affected by the acts of Wilkins in court as elsewhere. The judgment binds the parties and interests arising after the proceedings commence. But it does not affect strangers, or interfere with interests created and vested before the institution of a suit.

It is said that Cisna could only sustain an action against Wilkins ; he could not maintain one against the assignee. This is true of an action at law, but he could have filed a bill in equity against both to rescind the contract, and recover back what he had paid. If he chose to proceed at law, he must encounter the consequence. He subjected himself to the inconvenience of litigating the matter with Wilkins in one suit, and with his assignee in another. To *hold Curtis concluded by the decision at law, [**434** to subject his rights to be determined in a case where he was not and could not be a party, is to subvert all established principles.

●

IRWIN, for the defendants :

The action of assumpsit is an equitable action, and when brought to recover the amount paid upon a sale of land, on the ground of a failure of the contract, the plaintiff can recover no more than the amount paid, with interest. Such was the action brought by Cisna's administrators *v.* Wilkins. The right to recover depended upon the failure of the contract, and this fact is established by the judgment in the cause. It is not competent for the complainants to impeach this judgment in equity, by asking of this court now to make a different decision, unless he shows that he was prevented from making his full and fair defense at law by fraud, accident, or some act of the other party, unconnected with negligence or fault of his own. The doctrine is fully laid down in 3 Johns. Ch. 356, and 1 Schoales & Lefroy, 203, and also 2 Bibb, 6, 326.

The fact that the contract had been assigned to Silliman and Curtis can not vary the case. The right of the assignee is no greater than that of the assignor. When they bought Cisna's contract, they had full knowledge of the difficulties between the parties, and they agreed to indemnify Wilkins against all costs and damages. The failure of Wilkins to perform the contract, upon which the right of action accrued had taken place, before the as-

signment, and the right of action, with all its consequences, was beyond the reach of Wilkins or his assignee. An assignment could not divest it out of Cisna, and the right to prosecute the suit against Wilkins included the proposition that the decision should bind all interested. It is certainly well settled that the purchaser of a chose in action takes it subject to all the equities and interests existing between the original parties. 1 P. Wms. 130, 497; 1 Strange, 244; 1 Vesey, 123; 2 Vesey, 520.

The case of Rees and Smith, relied upon by the complainants' counsel, does not seem to have any bearing on the point now in **435]** controversy. There the court proceed on the *ground of fraud and accident; there the plaintiff at law was defeated by the *misconduct* of the defendant. No allegation of that kind is made here.

Opinion of the court, by Judge HITCHCOCK:

From the pleadings and evidence in this case it is manifest that the subject matter of the present controversy has been adjudicated by a court of law, in an action commenced by the present defendants against the complainant Wilkins. The object of the former suit was to recover back the consideration money which had been paid for the land, and could have been sustained upon no other principle than that the contract had been abandoned, or put an end to by the parties. In that case full defense was made, and precisely the same evidence exhibited on the part of the defendant as on the present occasion, with the exception of the testimony of a single witness. The testimony of this witness does not materially vary the facts. Having this evidence before them, the jury returned a verdict for the plaintiff, and upon this verdict the court rendered judgment. About two years after the rendition of this judgment, the bill now before the court is filed, the prayer being first to enjoin the judgment at law, and second to enforce a specific performance of the contract.

As before observed, the court of law must have proceeded upon the principle that the contract was at an end. There can be no doubt that the subject was completely within their jurisdiction; and whether the decision of the case was or was not correct is not now a subject of inquiry. A court of chancery does not act as a court of errors, to examine or reverse the judgments of a court of law. Upon a case made which comes exclusively within the jurisdiction

Curtis and Wilkins *v.* Cisna's Adm'rs.

of a court of chancery, and where a court of law could give no relief, chancery will interfere to enjoin or relieve against a judgment at law. But where the courts of law and of chancery have concurrent jurisdiction, and a party electing to pursue his remedy in one fails, he shall not be permitted, as a general rule, to resort to the other. It is said, however, in the present case, that the complainants seek to enforce the specific performance of a contract, which could not have been done by a court of law. This *is [436 true; and had the present bill been filed during the pendency of the suit at law, and had no defense been made in that case, this court might, and probably would have given relief. This, however, was not the course pursued. Wilkins had a right to elect, and did elect to make full defense in that court. He preferred to submit his controversy to that jurisdiction, and after a full examination the decision was against him. In this decision he acquiesced for two years or more, and, when threatened with execution, comes into this court to have the matter tried over again. I think he is too late, especially if, in addition to the other circumstances, we take into consideration the fact that Cisna, the person with whom the contract was originally made, is dead, and that this suit is prosecuted against his personal representative.

The complainants, aware of the difficulty they have to encounter in consequence of the decision at law, undertake to distinguish this from ordinary cases. It seems to be admitted that if Wilkins were the sole complainant before the court, the judgment at law would be conclusive, and the bill must be dismissed. But it is argued that Curtis was not a party in that case, and no person who has not had a day in court, none but parties and privies, can be concluded by a judgment at law or a decree in chancery. It is urged that Curtis alone is the meritorious and interested complainant—that Wilkins has no interest—that he is joined from necessity, or for the sake of form, in order to obtain the injunction—that inasmuch as Curtis has had no day in court he has now a right to be heard—and that the judgment against Wilkins shall not operate to the disadvantage of him, Curtis. This point has been argued with ability and ingenuity. Many authorities have been cited for the purpose of sustaining the position assumed. I feel no disposition to question the force of these authorities, but the difficulty is that they do not, in my apprehension, apply to the case under consideration. In order to ascertain the strength of

this argument, let us for a few moments examine as to the relative situation of these parties, and inquire whether Curtis appears before the court in a more favorable point of view than Wilkins. He claims to be, and is, an assignee, not the assignee of Cisna, but 437] of Wilkins. *The contract for the purchase and sale of the land was entered into by Cisna and Wilkins. When this contract was reduced to writing, partial payments were made by Cisna to Wilkins, and it was agreed that at a subsequent period the land should be conveyed, a further payment made, and other acts performed. Both parties made efforts for the performance of this contract, but whether it were in fact performed by either is not now the subject of inquiry. Previous to the commencement of any suit, and but shortly after the contract was made, Wilkins assigned to Silliman and Curtis his interest in the contract, conveyed to them the land, and at the same time took from them an obligation to indemnify him against any claim on the part of Cisna. This assignment was made without the assent of Cisna, the assignees having full knowledge of all the facts connected with the whole transaction. Subsequently Silliman transferred his interest to Curtis. Thus Curtis, by his own act, became interested in the business, and, as far as he could, voluntarily placed himself in the situation of Wilkins. By these transactions the rights of Cisna could not, it is believed, be affected.

It will not be denied, I presume, that had Cisna, on his part, complied with the contract, he might have applied to a court of chancery to enforce a specific performance by the other contracting party; or he might have resorted, at his election, to a court of law for the recovery of damages for the non-performance by his adversary. Or if the contract was abandoned, he might recover back the amount which he had paid. If he elected to proceed at law, he must, from necessity, proceed against Wilkins. Curtis was no party to the contract, and at law Cisna would have no claim against him. But were we to adopt the principle contended for by the complainants, Cisna, by the joint act of Curtis and Wilkins, would be deprived of his legal right; he could not avail himself of the remedy at law, but would be driven to chancery; a doctrine from which such consequences would result, can not be sanctioned.

The complainants urge that Curtis had no day in court; but can this be said with propriety? True, he was not a party upon

the record, but from the bill it appears that he was in fact and in truth the party in interest. He had undertaken *to indem- [438, nify Wilkins against any claim which might be brought against him by Cisna. When the action at law was commenced, he appeared, as is proven by the testimony, and managed the defense until final judgment, and it is presumed that he will not complain that his rights were sacrificed in consequence of any misconduct or neglect on the part of his assignor.

Upon the whole, I am of opinion that, inasmuch as the subject matter of this controversy has been settled by the adjudication of a court of competent jurisdiction; was acquiesced in for two years; and inasmuch as the assignee, under the circumstances of this case, does not come before the court under circumstances any more favorable than those of the assignor, therefore the bill of the complainants must be dismissed with costs.

Judge PEASE concurred.

Judge SHERMAN, having been of counsel, did not sit in this cause.

Judge BURNET's dissenting opinion:

In stating the reasons why I can not concur in the opinion of the court, in this case, it will be necessary to examine:

1. The consequences of the non-performance of the contract on the 1st of September.

2. The effects of the assignment to the complainant Curtis.

3. The operation of the judgment at law on the rights of the parties to the present suit.

1. The covenants in this contract are simultaneous. The deed was to be executed and delivered to Cisna on or before the 1st of September, upon his then paying the first installment, and securing the residue by bond and mortgage. Neither party could charge the other with a breach, so as to sustain an action at law, till he had tendered a performance, for till then they were in *pari delicto.* If a man gives credit and relies on his remedy, he is left to that remedy; but in this case no credit was given. The vendor was not to part with the title, nor the vendee with the money, till each was secured. In Jones *v.* Berkly, and Hotham *v.* The East India Company, Doug. 665, and 1 Term, 633, Lord Mansfield decides that the dependence or independence of covenants must be col-

lected from the evident sense and meaning of the parties, and 439] that however transposed they *may be in the deed, their precedency must depend on the order of time in which the intent of the transaction requires their performance. Every person will decide from the first reading of this contract that neither party intended to trust the other, or to render himself liable to perform in consideration of his remedy, on the contract, but in consideration of an actual performance by the other party. Wilkins engaged to deliver the deed to Cisna, on the 1st of September, upon his then paying, etc. It is not pretended that either party tendered a performance on that day, or that Cisna, on any subsequent day, offered to perform, or was ready or willing to perform, or that he made any attempt, either to execute or disaffirm the contract, prior to the tender of the deed by Wilkins. It seems that Wilkins, on the 1st of September, was at Mount Vernon, where the contract was made and deposited for safe keeping, and where he understood the parties were to meet for the purpose of performing it, and he avers that he was then ready to execute the deed. Cisna not attending, Wilkins executed a deed at Mount Vernon, seven days thereafter, and had it tendered to Cisna, at his residence, in Lancaster. During the succeeding winter a second tender was made of the deed, and after the assignment an offer was made by the assignees to perform the contract on the part of Wilkins. On these facts the question arises whether this contract has been forfeited by any laches of Wilkins, so as to bar him or his assignees from a specific performance. Admitting that Cisna was under no obligation to attend on the 1st of September at Mount Vernon, where the contract, which consisted of but one part, was deposited, and where the land, of which delivery was to be made, was situate, and that the understanding of Wilkins, on that point, was incorrect, it would by no means follow that there has been that kind of laches that ought to induce a court of equity to refuse their aid. Time is not usually considered as being of the essence of contracts, though it may be made so by the stipulation of the parties. Equity will relieve in cases of forfeiture, when compensation can be made, and the default is only in time; and the books abound in cases where chancery has enforced agreements, although the plaintiff had failed to perform on the day fixed on in the contract. It will not be contended by me that 440] time is of no moment, *and that men may fulfill their en-

gagements when they please. Such a principle would be fraught with mischief. It would introduce that kind of negligence and disregard of obligations that would be as inconvenient to the business of society as it would be injurious to public morals. The modern rule on this subject seems to be, that a party who has not performed his undertaking, on the day appointed, may nevertheless claim the aid of a court of chancery, if he can show a reasonable excuse for his omission; or if the opposite party has acquiesced in the delay, unless there has been such a change of circumstances as would render a specific performance manifestly inequitable. In the case of Vernon *v.* Stephens, 2 P. W. 66,. the complainant, the purchaser, had not paid the money on the day stipulated, yet he obtained a decree, the chancellor observing that if the defendant got his money, interest, and cost, he would have no reason to complain; that lapse of time in payment might be compensated with interest and cost; that in cases where there has been no acquiescence by the defendant, nor any specific apology offered by the complainant, courts have decreed a performance on the ground that there had been no unnecessary delay practiced by the plaintiff. It is also said the title to an estate requires so much clearing and inquiry, that unless substantial objections appear, not only as to time, but as to an alteration of circumstances affecting the value of the thing, or such as arise from the conduct of the parties themselves during the time, the objection can not be sustained. Newland, Covenant, 235.

In the case of Langford *v.* Pitt, 2 P. W. 629, the complainant not only had not tendered a conveyance on the day stipulated, but had it not in his power to do so, by defect of title. The master of the rolls decided, that it was sufficient if the party contracting to sell had a good title at the time of the decree, and in the case of Stourton *v.* Meers, cited in the last case, it appeared that the complainant, the vendor, had not a perfect title at the time of the articles, or even at the time of the decree, and the court granted him further time. The title was afterward perfected, and the defendant decreed to be the purchaser. In the case of Wynn *v.* Morgan, 7 Ves. 202, it was held, that as no unnecessary delay was imputable to the complainant, a specific performance ought not to be refused, because he had not a good title at the *time of the [441 contract, or even at the filing of the bill, and the title having been perfected, the court decreed a specific performance. It was de-

-cided in the cases of Williams v. Thompson, and Gregson v. Rid-
-dle, referred to in Newland, 238, that even though a clause be in-
-serted in an agreement, declaring it void, if the stipulation as to
time be not complied with, still equity will not consider the per-
formance at the day an essential part of the contract. In the lat
ter case, Lord Thurlow said, "It has been often attempted to get
rid of an agreement on this ground, but never with success. The
most that has ever been made of the circumstance of an agree-
ment, not being carried into execution at the time agreed on is, it
has been held to be evidence of the waiver of the agreement, but
has never been held to make the agreement void." It is not to be
inferred, however, from these cases, that time, in a contract, is
wholly immaterial, and that parties may trifle with their agree-
ments on a calculation that they may perform them as may be
most convenient to themselves. If delay takes place, some satis-
factory reason must be given for it, or it will be considered as a
waiver of the bargain. There is a great diversity in the causes
that give rise to delay in the performance of contracts, and each
case must depend, more or less, on its own circumstances; but it
is believed no case can be found, in which equity has considered
the day wholly immaterial. Newland, in his treatise, 242, states
the rule to be, that when a party who applies for a specific per-
formance of a contract, has omitted to execute his part of it, for a
considerable time after the day appointed for that purpose, with-
out being able to assign sufficient reasons to justify, or excuse his
delay, the court will not compel a specific performance, and the
reason given is, that the court consider his conduct as evidence of
an abandonment of the agreement. The equity of this rule has
been extended to contracts, in which no day was specified, where
the complainant had consumed much time unnecessarily, and a
material alteration had taken place in the value of the property.
Guest v. Homfray, 5 Ves. 818. In that case, the master of the
rolls observed, that if the plaintiff stands acquitted of the charge
of practicing unnecessary delay, in making out his title, the court
will not refuse him a specific performance, because he afterward
442] *suffers a period of time to elapse before he files his bill.
The opinion of Chancellor Kent, in Benedict v. Lynch, does not
clash with the principle here stated. It will be found, on exami-
nation, that there is no similarity between the facts of that case
and those which exist in this. Benedict had not merely neglected

a performance for a few days, but for several years. The contract contained an express stipulation, that if the plaintiff failed, in either of his payments, the agreement was to be, void. The plaintiff had admitted his inability to perform, and had agreed that if defendant would permit him to remain on the premises, one year, he would then give up the possession. He was not only guilty of gross negligence, but the facts of the case amounted to an actual abandonment. Here the contract was to be performed by both parties, on the 1st September. The land was contiguous to Mount Vernon, where the contract was made and deposited. The complainant understood the parties were to meet at that place, to execute the contract, and attended on the day, as he avers, ready to do so. The defendant did not attend. Seven days afterward the complainant executed a deed, which was tendered to defendant at his residence, and afterward at Mount Vernon. These facts show that the delay of the tender was neither unreasonable nor unaccounted for, and every presumption of an abandonment is excluded. I therefore conclude that the objection as to the time of the tender can not be sustained.

2. The second inquiry is, how far the rights of the parties have been affected by the assignment to Curtis.

It appears from the bill and exhibits, that on the first of February, 1817, which was several months after the deed had been executed and tendered to Cisna, and after his refusal to perform the contract, Wilkins, being pressed for money, was under the necessity of selling his interest in the contract, and did sell and assign it to Silliman and Curtis, authorizing them to make use of his name in any suit that might be thought necessary; at the same time the deed executed and tendered to Cisna was delivered to them, with authority to deliver it to Cisna, should any compromise take place. Silliman afterward sold and assigned all his interest in the contract to Curtis, for whose benefit *the [443 suit is prosecuted. These are the material facts in relation to the assignment.

On the part of the defendant, it was contended that by this assignment Wilkins put it out of his power to perform his covenant, and that the defendant could not be required to accept a conveyance from an assignee.

It is not easy to perceive the force of this objection; Wilkins had a right to sell his interest in the contract, provided he did it

449

so as not to prejudice the rights of the defendant. This appears to be the fact, as it is one of the stipulations of the agreement, that the deed first executed and tendered to Cisna should be put into the hands of the assignees, with power to deliver it to Cisna on his performing the original agreement. There was no necessity, therefore, of a conveyance from the assignee to the defendant. The title offered is from Wilkins himself. The object of the assignment was not to vest the title in the assignee, but the money due on the contract with Cisna; and with that view the deed executed on the 7th of February was delivered, in the form of an escrow, to be delivered over to Cisna on his complying with the contract. A deed generally takes effect from the delivery, but this rule is departed from, and the doctrine of relation is resorted to, when it becomes necessary to prevent fraud, or give effect to the intention of the parties, if third persons are not injured.

A deed delivered as an escrow usually takes effect from the performance of the condition and the actual delivery to the grantee, but the fiction is always resorted to, and the deed considered as taking effect from its execution, when justice requires it.

In the case of Butler and Baker, 3 Co. 35, it was decided that a deed delivered to a third person, as an escrow, and afterward delivered to the grantee, should relate back, and take effect from the first delivery, for the purpose of giving effect to the deed; as if a *feme sole*, having made a deed, should marry after the conditional delivery, and before the delivery to the grantee; or if a grantor, whether *feme sole* or not, should die between the first and second delivery. In these cases, the deed would relate back to the first 444] delivery. This is done to prevent injury, and to *uphold the deed, or in the language of Coke, "from necessity *ut res magis valeat quam pereat.* To this intent, by fiction of law, it shall be a deed *ab initio*, and yet in truth it was not his deed till the second delivery." In the case of the lessee of Woolams *v.* Clapham, 1 Term, 600, it was held, that the title of the surrenderee, after admittance, was perfect, as from the time of the surrender, and should relate back to it. That is, although the title, in strictness of law, is not complete till the admittance, the title shall relate back, and take effect from the time of the surrender.

So in the case of Hermitage *v.* Thompkins, 1 Lord Raym. 729, it was ruled, that if a man demises lands by indenture, in which he has no interest, and afterward buys them, he will be estopped,

unless the want of title appears in the recitals of the lease. In that case, the fiction carried back the grant to the lessor to a period antecedent to its date, to give effect to the lease made at a time when the lessor had no pretense of title. In the case before us, the deed to Cisna was executed on the 7th September, and tendered shortly after, and on the first of February following, when the contract was assigned, it was delivered to Curtis, the assignee, as an escrow for the use of Cisna, and is now brought into court for that purpose; and, if accepted, must relate back to the first delivery, or, if necessary, to its date. Curtis, by the terms of the assignment, was made the instrument for passing the title direct from Wilkins to Cisna. He disavows all claim of title in himself, and produces the deed, praying for such a decree as will make it operative, to vest the title in Cisna. There is, therefore, no ground for the objection, that the title must pass through a third person; but if such an inconvenience could result from the assignment, the decree can be so framed as to guard against it. Had Curtis purchased for the avowed purpose of overreaching the right of Cisna, he would have been a fraudulent purchaser, as he had notice of the contract, and he would have held the title subject to the equity of Cisna.

The deed of the 7th September, as we have seen, was delivered to Curtis as an escrow, and it was not the intention of the parties that the title should vest in him, unless that deed should become inoperative by a failure on the part of *Cisna; as Wilkins [445 had a right to assign his interest, this court ought to protect it in the hands of his assignee. But it can not be necessary to pursue this subject further. The case of Hashbolt v. Porter, 2 Pow. 138, seems to establish the principle, that an assignee, not being a party to a suit against his assignor, is not bound by the decree rendered, but may go into the whole merits, in a subsequent suit, in which he is a party.

3. The next inquiry is, whether the judgment at law can operate as a bar to the decree prayed for by the bill. It appears by the exhibits, that after the assignment, the tender, and the death of Cisna, his administrator commenced an action of assumpsit against Wilkins, for the purpose of recovering from him the value of the sheep delivered on the contract. The declaration contained but one count, charging that defendant was indebted to Cisna, in his life, in the sum of $6,000, as well for divers goods sold and de-

livered, as for one hundred sheep sold and delivered by the said Thomas to the said Francis, and also for money by the said Francis before that time had and received to the use of the said Thomas. . The defendant pleaded the general issue, on which there was a verdict and judgment for the plaintiff. It is contended that this judgment is final, and that it must restrain the court from investigating and deciding the merits of the case now before them, on the ground, that when a court of law has competent jurisdiction, and can give full relief, its decision is final. Without attempting to controvert this principle, I will observe that it does not and can not apply to this case, because the parties are different—the subject matter is entirely different, and the court that rendered the judgment had no jurisdiction of the case now presented, nor had they power to grant the relief prayed for in this bill. The bill presents a contract for the sale of real estate, involving the rights of an assignee, and the various questions growing out of a non-performance on the day stipulated, and it prays for the specific execution of the contract. To claim for the court that rendered the judgment a power to hear and decide these matters, and to grant the relief prayed for, would be neither more nor less than to 446] convert it into a court of chancery, and vest it *with all the powers that distinguish such a court from a court of common law.

1. The parties are not the same. This bill is filed exclusively for the benefit of Curtis. The suit at law was against Wilkins alone; Curtis was not a party, and therefore was not and could not have been heard, nor was it in his power to compel Wilkins to defend the suit. It is true that courts of law will protect the rights of assignees· as far as their forms of proceeding will permit, but these fall far short of what was necessary for the security of this assignee, had his claim been before the court. To conclude a person by a decision at law, he ought to have a day in court, and an opportunity of being heard. As to the complainant, Curtis, this has not been the case; he is now heard for the first time, and for the first time his claims are presented for examination. By the rules of common law, a record can not be received as evidence, unless it be between the same parties, and involve the same point. Hence the record of a conviction for an assault and battery can not be given in evidence in an action for damages against the same defendant for the same assault and battery.

452

Curtis and Wilkins *v.* Cisna's Adm'rs.

2. The subject matter of the suits is not the same, nor is the object the same. The suit at law, we have seen, was an action of assumpsit, founded on a sale of goods and sheep, and the object was to recover the value of those goods and sheep. The subject matter of the bill is a contract for the conveyance of real estate, and the object of it is a specific performance of that contract. I am aware that the sheep had been delivered as a payment on the contract, but that circumstance can not affect the case. We have seen that the contract had neither been forfeited nor abandoned by Wilkins; that it was not the ground of the action, nor necessarily nor directly before the court; nor was there anything in the record having a perceptible allusion to it. But the bill in chancery is founded directly on the contract. It brings before the court every circumstance connected with it, and the right of the complainant to enforce it. In the one case, the court decided on the right of Cisna to recover from Wilkins the value of certain sheep delivered on a contract; in the other, they are called upon to decide, whether Curtis is not entitled to the specific performance of *that con- [447 tract. The subject matter, and the object of the first suit, was within the jurisdiction of the court that decided it; but neither the subject matter, nor the object of the present suit, was within their jurisdiction, nor could they have granted the relief here prayed for.

The fact that the representatives of Cisna have recovered a judgment for a sum of money, does not destroy the power of a court of chancery to investigate the equity of that judgment. This may be done without calling in question its correctness, in reference to the premises on which it was rendered. It frequently happens that such judgments are obtained because the only ground on which they could be resisted is not within the reach of a court of law. Whatever might have been the ground on which the judgment in favor of Cisna was had, it would appear to be sufficient to sustain the jurisdiction of this court, and the right of the plaintiff to the relief he seeks, that he has made and supported a case that entitles him to a decree for a specific parformance, and that that decree can not be rendered without enjoining the judgment at law. It might be inferred from the arguments of counsel, that it was considered by the court that rendered the judgment that the tender of a deed was a condition precedent; that Wilkins, having failed to tender on the 1st of September, could not avail himself of a

453

subsequent tender in a court of law. If this were the case, and there appears to be no other ground on which a recovery on such facts as are now before us could have been had, it must put the question at rest, as it presupposes a want of power in the court that rendered the judgment to grant the defendant that relief which a court of equity is in the daily habit of granting, nor can it affect the question to concede, that the court restricted their own powers unnecessarily. If, as a court of law, they held the defendant, Wilkins, strictly to a tender on the day named in the contract, it must have been from an actual or supposed want of that power which this court clearly possesses; and in either case. the merits of this complainant have not been heard or decided. It is a question that has been much litigated, how far a court of chancery can relieve a person against the consequences of an omission to perform his contract on the day stipulated. It is not therefore surprising, that a court of law, viewing these covenants as it is understood 448] *they did, should have decided against hearing the only defense, on which a recovery could be resisted. The restriction imposed by that court, on its own jurisdistion, has compelled a resort to chancery, and it does not become us to say they have erred in deciding the limits of their own power.

It is admitted that the merits of a judgment can never be overhauled, in an original action, either at law or in equity. Such judgments are conclusive till reversed, or set aside, by a competent revising power; and I wish it distinctly understood, that no attempt is made to sustain this bill on the ground of supposed error in the court of law. It is to be taken for granted that that court decided correctly, and that we, with the same case, and exercising the same extent of power, would have decided in the same way.

Disclaiming all right to examine the correctness of the judgment at law, the ground upon which I would sustain this bill is, that the relief it prays for could not be granted by the court at law, and that in consequence of rejecting the evidence, and with it the defense of Wilkins, on the supposition of a want of jurisdiction to hear and decide it, a judgment has been obtained against him, which, in equity and good conscience, ought not to be enforced. Viewed in this light, the case seems to be stripped of all difficulty, and to be placed on the ground on which chancery usually relieves against judgments at law. The case of Moses and Macferlan went

454

further than is necessary, to support this bill. There an action at law was sustained, to recover back a sum of money, paid on the judgment of an inferior court, because that court had rejected the defense set up as not being within their jurisdiction. Here the same ground exists, and in addition to that circumstance the whole object of the bill is without the jurisdiction of a court of law, and no part of the case could have been examined by them with a reference to the decision now prayed for.

Inasmuch, then, as the parties, the subject matter, and the object of the suits are different; as the one now before us calls for the exercise of powers not possessed by a court of law, and as Curtis is an assignee, and was not a party to a former suit, I must believe, that the judgment is not a bar to the present suit, and that the plaintiff is entitled to the relief he prays for.

---

## *Hunter v. Goudy and others. [449

*Relief in Equity.*

Contracts made in good faith can not be rescinded in equity where both parties were mistaken as to value.

This case came up from Greene county. The object of the bill was to obtain relief against a judgment at law on certain sealed notes made in 1816.

The bill charged that on the 2d of May, 1816, J. Hunter agreed to purchase of Ekellis Willhite five lots in the town of Pittsburg, in the then territory of Indiana. That Willhite represented that he, with David Hillis and John Minor, were proprietors of the town, which was represented to be in a flourishing condition, and likely to become a seat of justice. That for the purchase money, he gave five notes payable in September following, for $355; three made payable to Ekellis Willhite, and two to his son, John H. Willhite. At the same time he received Ekellis Willhite five title bonds in the following terms:

"We, Ekellis Willhite, John Minor, and David Hillis, obligate