37    15
122a  123

## LANSING vs. STONE.

The statute of 6 *Anne*, *ch.* 3, as altered and re-enacted by 14 *Geo. III.*, which provides that no action, suit or process shall be had against any person in whose house, chamber, stable, barn or other building, or on whose estate any fire shall accidentally begin, nor shall any recompense be made by such person for any damage done thereby, is a part of the common law of New York, having been introduced into the colony by the colonists, and not having since expired, or been repealed or altered.

Where a lessor, having at least an implied license to go into a chamber of the demised tenement, with a lighted candle, after property he is allowed to keep there, thus enters, and soon after, the house takes fire and is consumed, with its contents, no action will lie against the lessor, by the tenant, to recover the value of his goods destroyed, without proof of negligence or carelessness on the part of the lessor, causing the fire.

There can be no presumption, in such a case, that the lessor did not exercise ordinary care. The presumption, without proof to the contrary, is that he did use ordinary care.

THIS was an appeal from a judgment of the Madison county court, affirming the judgment of a justice of the peace. The action was commenced in a justice's court. The complaint alleged that the plaintiff, in the year 1858, rented a house of the defendant, in the town of Cazenovia, and placed his household furniture in it; that the defendant afterwards entered the house, in the absence of the plaintiff and his family, and through the negligence and carelessness of the defendant the house took fire, and the plaintiff's furniture therein was burned, to his damage, &c. The defendant, by his answer, denied all the allegations in the complaint. The action was tried before the justice without a jury. The proof showed that the defendant owned a farm, on which the house was situated. The plaintiff hired the house of the defendant for one year, from April 1, 1858. The house, and some of the plaintiff's furniture, which was not got out, were burned, in the daytime, in August, 1858, when the plaintiff and his family were all absent. The defendant cultivated the land, and kept some things in the chamber over the wing, or woodhouse, and went into the chamber "once in a while," to the knowledge of the plaintiff, and without objection.

The plaintiff was examined as a witness, and testified that the defendant did not reserve the chamber, but had the privilege of leaving some irons there. The defendant testified that by the contract of leasing he was to have the privilege of keeping things in the chamber; and kept things there, such as ox-bows, staples, &c. The plaintiff testified that the defendant said, after the fire, "it was all his doings, the house burning; that he had been into the chamber, in the daytime, previous, with a lighted candle." Palmer Freeborn testified that the defendant said "he had been up in the chamber to look for an iron of some description; that he had a candle there; and that he thought it (the house) must have taken fire from the candle." Another witness testified that the defendant said "he must have set it (the house) afire from his candle; that he went into the chamber with a lighted candle, and he thought it (the fire) must have taken from that." The defendant testified that he had been in the habit of going into the chamber with a lighted candle, after such things as he kept there, and kept a candle there, to light and go in with. That on the day of the fire, soon after the plaintiff went away, at about 10 A. M., he went into the chamber, with a lighted candle, to get a part of a staple to an ox-yoke. That he first sent his son for it, who came back without it. The defendant testified, in substance, that he was careful, so as not to set any thing on fire with the candle, and that he put it out when he left. That he was from 80 to 100 rods from the house, on the farm, when he first saw the house was on fire. That the smoke was then coming out of the roof of the upright part of the house. That he and his son ran to the house, got water and went into the chamber where he had been with the candle, and "there was no fire there." That there was fire in the garret. The defendant's son was not sworn, on the trial. Walter Ainsworth testified that when he first saw the fire it was pretty much over the roof of the upright part, and that "the roof over the wing was not on fire any." The defendant got some

of the plaintiff's furniture out of the house, and tried as hard as he could to get the whole of it out, and to put out the fire. The plaintiff testified he had a fire in the house in the morning, before he and his family left the same, the day it was burned; but he supposed his fire went down while he and his family were at breakfast, and he also supposed it was not built up again. The plaintiff asked the defendant if he had not previously had the house insured, which the justice excluded as immaterial. The plaintiff offered to prove that after the fire the defendant received the insurance money; which evidence was also excluded by the justice. The plaintiff recovered a judgment against the defendant for $40 damages, besides costs, which was affirmed by the Madison county court.

*D. W. Cameron*, for the appellant.

*H. C. & R. L. Miner*, for the respondent.

*By the Court*, BALCOM, P. J. It is proper, in this case, to refer to the law touching the liability of a person for damage a fire does to the building or other property of another, that accidentally begins in his own house or other building. I mean a fire that happens by reason of the negligence of the owner of the house or other building in which it begins, or the negligence of his servant, and burns the house or other property of a neighbor.

Blackstone stated the law, in his time, as follows: "If a servant kept his master's fire negligently, so that his neighbor's house was burned down thereby, an action lay against the master; because this negligence happened in his sevice; otherwise, if the servant going along the street with a torch, by negligence sets fire to a house; for there he is not in his master's immediate service, and must answer the damage personally. But now the common law is, in the former case, altered by statute, (6 *Anne*, 3,) which ordains that no action

shall be maintained against any in whose house or chamber any fire shall accidentally begin; for their own loss is sufficient punishment for their own or their servant's carelessness." (1 *Black. Com.* 431.) The above mentioned act was re-enacted by statute, (14 *Geo. III.*,) which provided that "no action, suit or process whatever shall be had against any person in whose house, chamber, stable, barn or other building, or on whose estate any fire shall, after the 24th day of June, 1774, accidentally begin; nor shall any recompense be made by such person for any damage thereby, any law, usage or custom to the contrary notwithstanding."

I think the statute of Anne, above mentioned, as altered by that of 14 Geo. III. I have quoted, is a part of the common law of this state, notwithstanding the remarks, *arguendo*, of Judge Denio in *Althorf* v. *Wolfe*, (22 *N. Y. Rep.* 366.) In *Bogardus* v. *Trinity Church*, (4 *Paige*, 178,) Chancellor Walworth said : " The common law of the mother country as modified by positive enactments, together with the statute laws which were in force at the time of the emigration of the colonists, became in fact the common law, rather than the common and statute law, of the colony. The statute law of the mother country, therefore, when introduced into the colony of New York, by common consent, because it was applicable to the colonists in their new situation, and not by legislative enactment, became a part of the common law of the province." Chancellor Kent says : "It is also the established doctrine that English statutes passed before the emigration of our ancestors, and applicable to our situation, and in amendment of the law, constitute a part of the common law of this country." (1 *Kent's Com. 4th ed.* 472. *See* 19 *N. Y. Rep.* 73.) By section 17 of article 1 of the existing constitution of the state, such parts of the common law, and of the acts of the legislature of the colony of New York as together did form the law of the said colony on the 19th day of April, one thousand seven hundred and seventy-five, are in force, which have not since expired, or been re-

Lansing *v.* Stone.

pealed or altered. A similar provision was contained in our state constitutions of 1777 and 1821. The statute (14 *Geo. III.*) I have quoted, was in force in the colony of New York on the 19th day of April, 1775, and it has not since expired, or been repealed or altered; for it was a part of the common law of said colony, and therefore is now a part of the common law of the state. I think no repealing act of our legislature, not even that passed December 10, 1828, (2 *R. S.* 779,) is applicable to English or colonial statutes which were a part of the common law of New York. This conclusion is sustained by the opinions of Chancellors Walworth and Kent, which I have quoted.

I have said this much to show that if a man's house or other building takes fire by reason of his own or his servant's negligence, he is not liable for the damage the fire does by spreading and burning his neighbor's house or other property. The interest the owner of houses and other buildings has in preserving them from destruction by fire, is probably the only guaranty his neighbors have against his own or his servant's negligence in the use of that dangerous element in his own houses and other buildings. A man's loss by a fire that accidentally begins in his own house or other building and burns it, according to Blackstone, is sufficient punishment for his own or his servant's carelessness, without making him pay the damage such fire does to the property of others. And his opinion clearly is, if such a fire be caused by negligence, it is to be deemed accidental.

The defendant in this case had as great an interest in preserving his house from destruction by fire, as the plaintiff had in taking care of his household furniture so it would not be burned. If the plaintiff had been permitted to prove, as he offered to, that the defendant had the house insured before it was burned, and that he afterwards received the insurance money, the evidence would not have materially changed the case. The offer was not to prove an over-insurance; and the plaintiff did not allege or claim that the house was in-

tentionally set on fire by the defendant. But as the offer was rejected, its character, or that it was made at all, is of no importance.

It cannot be·said that the defendant wrongfully went into the chamber, with the candle. The complaint did not charge him with wrongfully entering the house or chamber, or with wrongfully going into the latter with a lighted candle. And I think the plaintiff's own evidence shows the defendant had at least an implied license to go into the chamber with a lighted candle, at any time, after things he kept there. There can be no presumption that he did not exercise ordinary care when he went into the chamber with the lighted candle, the day the house was burned; for ordinary care is that amount of attention or diligence which men of common prudence generally bestow in the care and use of their own property, or in transacting their own business; and the presumption, without proof to the contrary, is that he was thus careful.

The declarations of the defendant, to the effect that the burning of the house and furniture was all his doing ; that he had been into the chamber with a lighted candle just previous to the fire ; and that he thought the house must have taken fire from the candle, if there was no evidence to weaken their force, would not prove he was negligent or careless in the use of the candle. They only show that the fire was accidental, or, at most, that it might have been caused by the careless manner the defendant used the candle; not that it *was* so caused. But the·force of those declarations was greatly weakened, if not entirely overcome, by the evidence of the defendant and of Ainsworth. Their statements are uncontradicted, that the fire was pretty much over the roof of the upright part of the house before the roof on the wing was on fire at all ; and the defendant swore positively that he was careful with the candle; and also that after the upright part of the house was on fire he went into the chamber where he had been with the candle, and "there was no fire

there." Besides, the plaintiff testified he had a fire in the house in the morning, before he and his family left the same, the day it was burned; though he supposed his fire went down while he and his family were eating breakfast, and also supposed it was not built up again. It seems to me the evidence, when all considered together, wholly failed to show that the fire was caused by the carelessness or negligence of the defendant.

But I think the plaintiff could not recover, by reason of the common law that exempts a person from liability for damages caused by a fire that accidentally begins in his own house or other building through the carelessness or negligence of himself or his servant, and burns the house or other property of his neighbor, without showing that the fire was caused by the willful act of the defendant, or that he wrongfully entered the house or chamber with a lighted candle. Suppose it were clear that the fire in question originated from that kept in the house by the plaintiff, I think the defendant could not recover the value of the house, in an action against him, unless he could show that the plaintiff intentionally left his fire so it would burn the house. For tenants were relieved from the liability the ancient common law imposed on them for the consequences of fires that accidentally begin in houses rented and occupied by them, by statute 6 *Anne, ch.* 31, § 67, (made perpetual by 10 *Anne, ch.* 14,) which provides " that no action shall be maintained against any person in whose house or chamber any fire shall accidentally begin;" and more recently by the statute of 14 *Geo. III, ch.* 78, by which it is enacted that no action, suit or process whatsoever shall be had, maintained or prosecuted against any person in whose house or chamber any fire shall accidentally begin, or any recompense be made by such person for any damage suffered or occasioned thereby. They can however make covenants that will oblige them to rebuild the buildings demised to them, if they are destroyed by fire, during the continuance of their leases. (*See Woodf. Land. and*

*Ten. by Harrison*, 434; *Arch. Land. and Ten., Law Lib. 4th series, vol.* 28, *p.* 192; 2 *Platt on Leases*, 187.) And as those statutes modified the common law of Great Britain, they became part of the common law of the colony of New York, and are now a part of the common law of the state. (See authorities touching this question, cited *supra*.) But this question, and some others I have discussed, need not be definitively passed upon in this case.

My conclusion is that the defendant rightfully went into the chamber with a lighted candle; and that the plaintiff did not show he was negligent in using the candle, at the time he went into the chamber with it. In other words, I think the evidence, when all considered together, does not establish a cause of action against the defendant. The judgment of the justice was therefore against evidence and law; and the county court should have reversed, instead of affirming it. It follows that this court should reverse the judgment of the county court and that of the justice, with costs.

Judgment reversed.

[BROOME GENERAL TERM, January 28, 1862. *Balcom, Campbell* and *Parker*, Justices.]