<hr/>

### WINTHROP *vs.* DOCKENDORFF & AL.

Where a debtor in execution was liberated from prison, on giving a bond conforming to the provisions of a law for the relief of poor debtors, which was not then in force;—it was holden that the bond was good at common law;—and the debtor having regularly taken the poor debtor's oath, in the forms provided by the *repealed* law, the creditor, in a suit on the bond, had execution awarded in equity, for only a nominal sum.

UPON the revision of the laws during the session of the legislature in the winter of 1821, the former statutes for the relief of poor debtors in prison were included in the general act, by which most of the statutes of *Massachusetts*, so far as they related to this

State, were repealed.  The subject of the relief of poor debtors was then in the hands of a committee; but not being fully matured before the end of the session, it was referred to the next legislature;—so that from *March* 21, 1821, to *Jan.* 19, 1822, there was no statute in force authorizing the enlargement of debtors in prison, on their giving bonds; though this fact not being generally known, the practice of liberating on bond, and of admitting debtors to take the oath of insolvency and thereupon to discharge them, continued as before.

During this period, the defendant *Dockendorff*, being committed to prison on an execution in favor of the present plaintiff, was enlarged on giving a bond in the usual form to the gaoler, in the name of the plaintiff, conditioned that he should continue a true prisoner in the custody of the gaoler, and within the exterior limits of the gaol-yard or debtors' liberties, until he should be lawfully discharged, without committing any manner of escape, &c.;—and after citing the creditor, and pursuing the course prescribed by former statutes, his discharge by taking the poor debtors' oath was entered on the kalendar, and he returned to his home.

The plaintiff thereupon commenced this action on the bond. The defendants, after oyer, pleaded, *first*, a special performance of the terms of the condition.  To this the plaintiff *replied* that the debtor escaped from prison before he was lawfully discharged.  The defendants, in the *rejoinder*, set forth all the provisions of the law as they stood on the 21st of *March* 1821, and alleged the universal practice at all the prisons in the State after that time, as before; and stated the proceedings relative to *Dockendorff*, and the certificate thereupon issued to the gaoler, who lawfully discharged him.  To this the plaintiff demurred generally.

In the *second* plea the defendants set forth the same proceedings and provisions of law, as having been *represented by the plaintiff* to be legal, and in full force, and such as the debtor might adopt to obtain a lawful discharge; and that he did adopt them, and was discharged accordingly.  The plaintiff *replied*, denying such representations, and tendering an issue to the country, which was joined.

The *third* plea represented the bond as having been given to the gaoler for permission to go at large within certain limits, des-

cribing the debtors' liberties; and so as against law, and void. Hereupon also the plaintiff demurred in law.

At the trial of the second issue, before *Weston J.* the only evidence was that of the gaoler, who testified, that supposing the former statutes to be in force, he advised the debtor to give bond, and had divers conversations with him and his sureties, on that subject, as was his custom in such cases, and had no doubt but he facilitated his discharge in the form prescribed in the former laws. But he had no special authority from the plaintiff, nor was it pretended that the plaintiff had any other agent in the business. The plaintiff objected to the admission of any conversations of the gaoler, until it should be first proved that he was the plaintiff's agent; but the Judge overruled this objection, the plaintiff having accepted the bond. A verdict was returned for the defendants, which was taken subject to the opinion of the whole Court upon the admissibility of the evidence; and the plaintiff also moved for a new trial on the ground that the verdict was against evidence, and against the weight of evidence in the same cause.

*Allen* and *Sprague,* for the defendants, contended that the parties, by referring to the debtors' liberties, and to a discharge by due course of law, which did not exist, had created a latent ambiguity in the bond, rendering it void for uncertainty, unless extrinsic evidence could be resorted to for its explanation. But by such evidence, it is manifest that the parties referred to the old law as part of their contract, and considered themselves as fully adopting its provisions, thus continuing it, conventionally, in force, so far as their respective rights were concerned. 7 *Johns.* 385. 1 *Phil. Evid.* 476. Rex v. Laindon 8 *D. & E.* 379.

But if the old statutes are not to be taken as part of the contract, the bond stands at common law, and is void being for ease and favor. 1 *Phil. Evid.* 134. 1 *Saund.* 161. *Thompson v. Lockwood* 15 *Johns.* 256. 4 *Bac. Abr. Sheriff, O. Dole v. Moulton* 2 *Johns. Ca.* 205. *Dole v. Bull* 2 *Johns. Ca.* 239. *Com. Dig. Pleader* 2. *W.* 25. *Loud v. Palmer* 7 *Johns.* 159. It is void on the ground of public policy, as it gives the sheriff the dangerous power to liberate one prisoner and retain another at his pleasure, discriminating between friends and foes.

It is also void because given for bail, in a case where the party was not bailable. *Bartlett v. Willis* 3 *Mass.* 103. *Page v. Trufant* 2 *Mass.* 162. *Morse v. Hodgdon* 5 *Mass.* 317. *Churchill v. Perkins* 5 *Mass.* 541. 10 *Co.* 100. But whatever may be the merit of these positions, yet substantial justice has been done between the parties; and in such cases it is the rule of the Court not to disturb the verdict. *Cogswell v. Brown* 1 *Mass.* 257. *Gerrish v. Bearce* 11 *Mass.* 193. 7 *Mass.* 467, 507. 8 *Mass.* 336. 1 *Johns. Ca.* 255. *Boynton v. Hubbard* 7 *Mass.* 112. 2 *Powell on Contr.* 196, 202. 3 *Burr.* 1909. The bond was given under the former statute, to be discharged by a compliance with its provisions; and the creditor, by accepting it, has adopted all the acts of the gaoler relating to the *same subject matter*. *Paley on Agency* 249.

*R. Williams*, for the plaintiff, insisted that the condition of the the bond was free from ambiguity; and admitted a sensible interpretation without resorting to any thing *ab extra*. There being at the date of the bond, no prison limits or debtors' liberties beyond the walls of the gaol, those terms in the condition may be referred to such apartments as the gaoler might and ought to provide for debtors, apart from persons committed for felony. 2 *Bl. Com.* 340. And by the lawful discharge mentioned in the bond, may be understood, a discharge by payment of the debt, or by consent of the creditor.

If this interpretation is inadmissible, then the condition is insensible, and void, and the bond is single. *Co. Lit.* 206. 1 *Bac. Abr. Condition, N.* Nor is it any excuse that the debtor was misinformed of his rights, or that the gaoler was ignorant of the law. 8 *Mass.* 423. 7 *Mass.* 101. 10 *Mass.* 190.

Neither is the bond void for ease and favor. The statute of *Hen.* 6. applies only to bonds running to the sheriff. 5 *Mass.* 340. But this bond is to the creditor, given voluntarily, and conditioned to remain a true prisoner, which was a lawful act; and it therefore is good. 11 *Mass.* 11. 7 *Mass.* 200. 8 *Mass.* 373, 423. 5 *Bac. Abr. Obligation, D.* 3.

As to the conversation of the gaoler, the plaintiff was not bound by it, unless he knew and ratified it. The act of suing the bond

is a ratification of the *taking* of it, but of nothing more. The principal ratifies only such acts of the agent as come to his knowledge. 1 *Bac. Abr.* 679. *Condition* Q. 3. 4 *Mass.* 427.

This cause was argued at *June* term 1823, and being continued under advisement, the opinion of the Court was delivered at *August* term 1824, in *Oxford*, by

MELLEN, C. J. In this case the defendants have pleaded *three pleas.* To the *second* plea there is a replication and issue to the country. To the *first*, there is a replication and a demurrer to the rejoinder. To the *third*, there is a demurrer. Upon the issue to the country, the jury have returned a verdict for the defendants; and there are *two* motions made by the plaintiff that the verdict may be set aside; one on exceptions to the opinion of the Judge in the admission of certain proof to the jury; and the other, at common law, on the ground that the verdict is against evidence and law. In the view we have taken of the cause, we do not deem it of any importance to examine the merits of either of the above motions, as we are satisfied that the issue to the country is wholly immaterial. It would therefore be useless to set aside the verdict, and grant a new trial, even if the motions were found to be maintainable; because upon the issues at law it is our opinion that the action is maintainable, and that the plaintiff is entitled to judgment, notwithstanding the verdict which has been found for the defendants on the immaterial issue. We proceed therefore to the inquiry which, in essence, though not strictly in form, is this, whether the *first* and *third* pleas in bar are good. They are both nearly of the same character. They seem to disclose only the particular facts relative to the prison limits as formerly established; the commitment to prison of *Dockendorff*, and his liberation therefrom, on taking the oath prescribed by a law, not then in force, to be taken by poor prisoners in gaol on execution. Now, as all the laws on the subject of gaol limits, and the discharge of poor debtors from close confinement on giving bond to continue within the gaol limits or debtors' liberties, had before this time been repealed by mistake, and were not revived until some time after the transaction set forth in the pleadings had taken place; we need not spend a moment in examining any por-

tion of them, subsequent to the declaration; for the facts therein disclosed are of no importance in legal contemplation, and of this we are bound to take judicial notice. The only question is, whether the declaration is good, and discloses a good cause of action: or in other words, whether such a bond as that now under consideration is a valid contract, or absolutely void.

As we have before observed, the several laws relative to the establishment of prison limits, and the liberation of poor prisoners committed on execution from close prison, on giving bond, were all of them, by mere mistake, repealed on the 21st of *March* 1821, and were not revived until *January* 19th, 1822. The bond now in suit bears date *Nov.* 15th, 1821. It was, therefore, given at a time when there was no statute in force in this State prescribing its condition or approbation, or authorizing the liberation of *Dockendorff* from close confinement in consequence of the execution of such bond. Of the repealing act, and its legal consequence, we are bound to take judicial notice. At the time of the execution of the bond, *Dockendorff* was lawfully in prison; he had no right by law to be relieved from *close* confinement, in any manner, or on any terms, unless on *habeas corpus*, or by payment of the debt, or the consent of the creditor. The bond is, as usual, made payable to the creditor; and in conformity to the laws which had been, and were, by all concerned, supposed *then* to be in force; and all parties acted fairly on that supposition. The plaintiff has agreed to accept it, by claiming the benefit of it in this action; and though he might have refused to accept it, and enforced his claim against the sheriff for an escape, he has very properly waived such claim, and as far as lies in his power, has ratified the bond by considering it as a valid one, and agreeing to accept it as such.

Several objections have been urged by the counsel, for the purpose of shewing the bond to be illegal and void.

1. It is said to be void as being a bond given for ease and favor. Such bonds are always made payable to the officer having the custody of the debtor. *Churchill v. Perkins* 5 *Mass.* 541. *Ibid. Morse v. Hodsdon* 314. *Clapp v. Cofran* 7 *Mass.* 101. And even such bonds were not void at common law, nor till the statute

of *23 Hen.* 6, *cap.* 9, which is now, by adoption and usage a part of *our* common law. But, besides, it must be remembered that the bond in the present case was made payable to the creditor; it was never intended *as a* security *to the* officer against the consequences of his own act.

2. It is urged that such a bond is void on the ground of policy, being in *restraint of liberty;* and it has been compared to bonds in *restraint of trade.* If a bond in restraint of personal liberty be void, on what principle is it void ? Cannot a man enlist as a *soldier,* or ship himself as a *seaman,* and thus restrain himself as to his liberty ? Do the laws of Congress in either case create the obligation; or does the voluntary act of the man himself create it ? Those laws designate his duties, and the punishments for his neglect to perform them; but he cannot be bound to their performance, or subject to those punishments, without *his own* prior consent and obligation.

Among the cases collected by *Powell on Contracts* 196—202, we do not find the case of bonds in restraint of liberty as void on the ground of public policy. Indeed we do not know in what books the doctrine contended for is to be found and established. But we cannot perceive how the bond in question can be said to have been given by the defendants in restraint of *Dockendorff's liberty.* The truth is, it was given for the express purpose of his enlargement from close confinement; for the purpose of obtaining *more liberty,* than he could by law be permitted to enjoy without the creditor's consent. Where is the principle to be found which renders such a bond void, if accepted by the obligee ? The bond in question was given with the same motives, and for the same object, as though the repealed laws had been then in force; and if they had been in force would not the bond have been just as much in *restraint of liberty,* as it is now, or in other words, would it not have been for the obtainment of *more liberty* ? ·

At this moment, what law is it which renders a bond for the liberties of the prison, binding on the obligors ? Not the statute which authorizes such bonds. The act of *February* 29th, 1812, which described the condition, provides that when the bond prescribed shall have been given by the debtor, " the gaol keeper " shall release him from close confinement without requiring

Winthrop *v.* Dockendorff & al.

" any other condition in such bond." The bond is the sheriff's protection; but it precedes the prisoner's discharge, and is made when he is in close confinement, for the purpose of procuring his enlargement. The principles of the common law give validity to the bond; by *these* principles, its due *execution* and proper *construction* must be determined; by these principles must its *validity* be decided, on any plea which may bring that in question. The only difference between a bond given by a prisoner in execution for debt, while the above statutes were not in force, and such a bond given before their repeal, or since their revival; is this ; that in the *former* case the sheriff had no right to discharge the prisoner in consequence of the bond; and its validity depended on the acceptance of the creditor; whereas in the *latter* case, the sheriff might, and ought to discharge the prisoner from close confinement, if the bond were duly made and approved; and such would be valid and sufficient, whether the creditor would or would not accept it. In both cases, as before stated, the bond must be tested by the principles of the common law; and the bond in the *latter* case, would be good, though not approved by two justices, if accepted by the creditor, according to the case of *Bartlett v. Willis* 3 *Mass.* 86. This seems to be the only fair and reasonable construction to be given to the statues on the subject.

On what principle, then, is the bond in question to be adjudged void ? It was voluntarily given ;—there is nothing immoral or unlawful in the condition ;—it was given to the creditor, for the purpose of obtaining an indulgence to which the debtor was not by law entitled, but which the creditor has sanctioned by his acceptance of the bond.

There are many cases where bonds given with the intention of complying with a statute provision, though not conformable to the statute, have been adjudged good at common law. The before cited case of *Morse v. Hodsdon* establishes this principle. In *Clapp v. Cofran* the bond was not given for double the sum due on the execution, as the law required ;—if it had been, it would not have been liable to chancery. The same principle is recognized in *Freeman v. Davis* 7 *Mass.* 200 ; and to the same point is *Arnold v. Allen* 8 *Mass.* 147. In *Burroughs v. Lowder* 8 *Mass.* 373, the bond was not taken in double the amount for which the

prisoner stood committed, and the sureties were not inhabitants within the county, as they should have been. But the Court observed,—" There is no reason why the bond should not be good " at common law ; it having been voluntarily entered into *for the* " *benefit of the principal,* to procure a relaxation of a lawful " imprisonment, to which he could not have been entitled with- " out giving bond.. The bond is now *accepted by the obligee,* and " he is entitled to judgment of forfeiture," &c.

A sheriff is not excusable for liberating a debtor on execution, unless a bond is, given according to the direction of the statute. If not *so* given, it is given and received *without any legal authority*; as much so as when *no law* exists permitting debtors committed in execution to have the liberties of the prison. And yet in the cases before cited, the bond was holden to be good, being accepted by the creditor, as a contract at common law. The bond in the present case was not authorized by any statute ; neither was it in the case of *Burroughs v. Lowder,* and several other cases resembling that. What substantial reason, then, can be assigned for the supposed difference,—or can any difference in reality exist ?

According to the cases before mentioned, the bond in question is good at common law ; and according to the provisions of the statute, execution may be awarded for the sum which is due, according to equity and good conscience. Considering all the facts in the case, there can be no difficulty in ascertaining this sum. The plaintiff in fact has suffered nothing. All parties have acted fairly and with good faith ; and the result is what it would have been, had the laws been in full force, as they were supposed to be at the time the bond was executed. But as the condition of the bond has been violated, there must be judgment for the amount of the penalty ; and the plaintiff may have execution for one dollar debt, and full costs.