## McKineron *vs.* Bliss.

Although the general laws affecting the subject, enacted by the British parliament, do not extend to the colonies of Great Britain, unless they are specially named, it seems this is not the rule in regard to those general statutes which relate to the king's prerogative, and his disposal of the crown lands or revenues.

Those laws are to operate upon the sovereign and his acts, and are not to affect the subject; and hence the reason of the rule which exempts colonies from the effect of the ordinary legislation of parliament—to wit, that they are not represented—does not apply, and the rule itself should not exist.

The king's grants are matters of public record, and no freehold can be granted by him but by matter of record. And the grants must pass through the prescribed offices, and be transcribed and enrolled.

The record of a grant, like every other record of a foreign court or government, is susceptible of proof.

A patent can always be proved by a *constat*, or an exemplification of the record, as well as by producing the patent itself.

If the patent cannot be produced, the proper evidence of it is an exemplification from the appropriate offices in England, or proof that upon application to those offices no record was to be found.

A party claiming under a patent from the king cannot, after proof of fruitless searches made in the state offices of this state, and in several county clerks' offices, for the patent, be allowed to ask a witness what is reported among the settlers on the tract to have been the disposition made of the letters patent.

ACTION of ejectment for about 60 acres of land in Herkimer county, part of lots 9 and 11 in Susannah Johnson's 3000 acre tract in the 4th allotment of the royal grant, in the town of Salisbury, Herkimer county. The tract known as the "royal grant" embraces a portion of the town of Herkimer, and the principal portion of Fairfield and Newport, parts of Russia and Manheim, and all the settled part of Salisbury. The plaintiffs gave in evidence the will of Sir William Johnson, (the grantee,) by which 3000 acres of the royal grant were demised to Susannah, and they deduced title to the premises in question under Susannah Johnson. They also referred to certain acts of the legislature of the state, relating to the escheat and forfeiture of certain parts of the royal grant as the property of Sir John Johnson, and reciting that they did of

McKineron *v.* Bliss.

right belong to others, including Susannah Johnson; but the enacting part of the statute did not relate to the title of Susannah Johnson. After proof of a search in the state offices of this state and in the clerks' offices of several counties, and that the patent to Sir William Johnson, of the tract known as the royal grant, could not be found, the plaintiff propounded this question to a witness:. "What is reported among the settlers of this tract, to have been the disposition made of the instruments of title or letters patent?" Which was objected to and excluded by the court, and the plaintiff was nonsuited, on the ground that the patent was not sufficiently proved. The cause was tried at the Herkimer circuit, in May, 1856, before PRATT, justice. The plaintiff appealed.

*Field & Sluyter,* for the appellant.

*A. Loomis,* for the respondent.

*By the Court,* W. F. ALLEN, J. Hearsay or reputation is never evidence, except in particular cases, and when from the nature of things no better or higher evidence can be obtained. (*Gould* v. *Smith,* 35 *Maine Rep.* 513.) But in this case the plaintiffs had not exhausted the sources of other and better evidence. Had possession accompanied the devise of Sir William Johnson, it would have been different, and the court might have been authorized to presume a grant from the crown. The plaintiffs count and found their claim of title upon the prerogative of the king as the universal occupant of all derelict lands, and the original owner of all the lands within his domains. The title of the king was in right of his crown, and could only be granted by him in pursuance of law. Patents of land, granted by him without law or contrary to law, are void. The general laws affecting the subject, enacted by parliament, I am aware, do not extend to the colonies of Great Britain, unless they are specially named; but I do not understand that this is the rule in regard to those general

statutes which relate to the king's prerogative and his diposal of the crown lands or revenues. Those laws are to operate upon the sovereign and his acts, and are not to affect the subject; and hence the reason of the rule which exempts colonies from the effect of the ordinary legislation of parliament — to wit, that they are not represented — does not apply, and the rule itself should not exist. The king's grants are matters of public record, and no freehold can be granted by him but by matter of record; and they must pass through the prescribed offices and be transcribed and enrolled. (2 *Bl. Com.* 346. *Com. Dig., Patent, A. E.* 2 *Thomas' Coke,* 489, *n. a.*) This record, like every other record of a foreign court or a foreign government, was susceptible of proof. A patent can always be proved by a *constat* or an exemplification of the record, as well as by producing the patent itself. (1 *Phil. Ev., Cowen & Hill's ed.* 463, (3). *Thomas' Coke,* 297. *Page's case,* 5 *Rep.* 105.) A grant, or charter from the crown, which ought to be by matter of record, may, under circumstances, be presumed, though within the time of legal memory. And a grant was presumed where there had been a possession in accordance with the alleged grant for 350 years. (*Mayor of Kingston* v. *Harris, Cowper,* 102.) I am unable to see why the proper evidence was not an exemplification from the proper offices in England, or at least some evidence that upon application to those offices no record was to be found. The places in which search was made would not be likely to repay the labor by bringing to light the desired instrument. It is not unlikely that if any patent was ever granted for the tract in question, it was taken to Canada on the flight of the individual who succeeded to the possession of the instruments of title of Sir William Johnson, and remained there. The evidence afforded by the statutes relied upon by the plaintiff was very slight as to the existence of any grant from the crown to Sir William Johnson, even if they, or the recitals, would be evidence against a stranger, which may be doubtful. They furnished no means of ascertaining the extent or boundaries of the tract, or the

---

estate granted, or the conditions of the grant, or whether it was without condition and absolute. It would be quite too slight evidence to authorize a judgment of ouster against a party in possession. But it is enough to say that the secondary evidence was not competent, for the reason that the higher evidence, if any existed, was within the reach of the party.

[ONEIDA GENERAL TERM, January 5, 1857. *Hubbard, Pratt, Bacon* and *W. F. Allen*, Justices.]