WILLIAM SCOTT DE CAMP and others

*v.*

EDWARD L. DOBBINS and others, executors.

1. "The residue of my estate I give and devise to the North Reformed Church of Newark, in trust, that they may use the same to promote the religious interests of the said church, and to aid the missionary, educational and benevolent enterprises to which the said church is in the habit of contributing," etc., is a good charitable bequest.

2. A misnomer of the legatee will not defeat a gift.

3. Third persons cannot object to the capacity of a corporation to take such gift, on the ground that its property already equals the amount limited by the general law under which it is formed. The state alone can interfere.

De Camp v. Dobbins.

4. If the character of a gift can be definitely determined, and it appears that it is charitable in a legal sense, the use of terms which would, if unexplained, render the gift void, will not defeat the donor's purpose.

5. *Norris* v. *Thomson*, 4 *C. E. Gr.* 608, 5 *C. E. Gr.* 489, distinguished.

On final hearing on pleadings and proofs.

*Mr. Jacob Vanatta*, for complainants.

*Mr. F. T. Frelinghuysen*, for North Reformed Dutch Church.

THE CHANCELLOR.

Mrs. Eliza A. Crane, late of Newark, deceased, by her will, after sundry gifts, disposed of the residue of her estate as follows :

" The residue of my estate I give and devise to the North Reformed Church of Newark, in trust that they may use the same to promote the religious interests of the said church, and to aid the missionary, educational and benevolent enterprises to which the said church is in the habit of contributing ; and I direct my trustees and executors to pass over to the officers of the said church all property, either real or personal, remaining after satisfying the above-named bequests ; and it is my will that the said church officials shall use and dispose of the said property at such times and in such manner as they shall deem expedient to promote the above-named interests, not holding the said property unexpended or unappropriated for a longer period of time than ten or fifteen years."

The residue of the estate will consist of real estate in this state, or the proceeds of the sale thereof, under the power of

NOTE.—Devises to charities are favored, and ought to be liberally expounded. *Jackson* v. *Phillips*, 14 *Allen* 539, 550, 556 ; *Holmes* v. *Mead*, 52 *N. Y.* 332, 339 ; *Charles* v. *Hunnicutt*, 5 *Call* (*Va.*) 311 ; *Hadley* v. *Hopkins*, 14 *Pick.* 240, 253 ; *Zanesville Co.* v. *Zanesville*, 20 *Ohio* 483 ; *Dickson* v. *Montgomery*, 1 *Swan* (*Tenn.*) 348. And "determined, like all other questions of construction, by the application of the ordinary rules of interpretation to the language of each particular will." *Chamberlayne* v. *Brockett*, *L. R.* (8 *Ch.*) 206, 211, *Lord Selborne*.

sale given to the executors by the will. It is claimed under the residuary devise and bequest by the North Reformed Dutch Church of the city of Newark, a religious corporation incorporated under the laws of this state. This suit is brought by the heirs at law of Mrs. Crane, for the purpose of obtaining the decree of this court declaring the residuary clause void on the following grounds, as stated in the bill: Because there is no such church as the North Reformed Church of Newark, and if there was at the death of the testator any religious society of that name in the city of Newark, it was unincorporated, and therefore could not take or hold property as a trustee, and because the persons who are to direct the uses of the trust are so uncertain, and the uses are so indefinite, uncertain and illegal that they cannot be executed as a charity or otherwise.

On the argument it was further urged that if the North Reformed Dutch Church of Newark be held to be intended to be designated as the trustee, that corporation is incapable of accepting the trust, inasmuch as it is, as the complainants insist, restricted in holding property to an amount not exceeding $2,000 a year, and it held property of that value at the time of the death of the testatrix. It is clear that the testatrix, by the words, "The North Reformed Church of

---

Some confusion, in regard to the power of equity over charities, has been caused by a misconstruction of 43 *Eliz.*, ch. 4, (A. D. 1601,) but the later and more satisfactory opinion is that that statute did not *confer* jurisdiction on the court of chancery. *Perry on Trusts*, § 694, note. A few other, principally later, decisions are added. *Ould* v. *Washington Hospital*, 1 *MacArthur* 541, (*U. S. Sup. Ct.*, Oct. 1877,) 6 *Cent. L. J.* 191; *State* v. *Griffith*, 2 *Del. Ch.* 392; *S. C.* on appeal, *Ib.* 421; *Newson* v. *Starke*, 46 *Geo.* 88; *Heiss* v. *Murphey*, 40 *Wis.* 276; *Frierson* v. *General Assembly*, 7 *Heisk.* (*Tenn.*) 683; *Meade* v. *Beale*, *Taney's C. C. Decis.* 339; *Board of Comr's* v. *Lagrange*, 55 *Ind.* 297.

But was merely intended to classify or enumerate certain charities which were enforceable in equity. *Thomson* v. *Norris*, 5 *C. E. Gr.* 489, 522; *Ould* v. *Washington Hospital, ubi supra.*

And to provide a new and more effectual remedy for breaches of trusts in that respect. 2 *Kent* (12th ed.) 283, and note; *Perry on Trusts*, § 724, note.

That the jurisdiction of equity over charities existed prior to and independently of the 43 *Eliz.*, see *Ibid.*; 10 *Am. Law Reg.* 129, 321, 449; *Wright* v. *Methodist Church*, 1 *Hoff. Ch.* 202; *State* v. *Griffith*, 2 *Del.*

De Camp v. Dobbins.

Newark," intended " The North Reformed Dutch Church
of Newark," of which she was at the time of her death, and
for a number of years before that time had been, a member,
and in whose church edifice she habitually attended divine
worship, and to the funds of which she was in the habit
of contributing for the purposes for which they were
employed. A misnomer of a corporation in a gift to it will
not defeat the gift. *Smith's ex'rs* v. *First Pres. Ch.*, 11 *C. E.
Gr.* 132. Besides, it appears that in 1871, the name of the
general society of the Reformed Dutch Church in the states
and territories of the United States was changed from "The
Reformed Dutch Church of America" to "The Reformed
Church of America," and after that time the word "Dutch"
was omitted from the corporate names of the churches con-
stituting that society, among which was the North Reformed
Dutch Church of Newark, and that that church was, when
the will was made, commonly designated as the North
Reformed Church of Newark. A corporation may obtain
a name by usage. *Alexander* v. *Berney*, 1 *Stew.* 90. Nor
have I any doubt of the capacity of that corporation to take
and hold the gift and execute the trust on which it is given.
A corporation may take and administer a trust which is
within the general scope of the purposes of the institution

---

*Ch.* 392, 421; *Incorporated Society* v. *Richards*, 1 *Dr. & War.* 258; *Vidal* v.
*Girard*, 2 *How.* 127; 4 *Wheat. Ap.* 1.

So, a defective execution of a power, in relation to such trust, will
be aided, "before, at and after the statute of *Elizabeth*." *Att'y-Gen.* v.
*Tancred*, 1 *Eden* 10, 14; *Sayer* v. *Sayer*, 7 *Hare* 377, 3 *MacN. & G.* 606;
*Perry on Trusts*, ¿ 739; see *Sherman* v. *Dodge*, 28 *Vt.* 26; *Witman* v. *Lex*,
17 *S. & R.* 92; *Roberts on Frauds*, 362.

In *Norris* v. *Thomson*, 4 *C. E. Gr.* 307, 312, it is stated by Chancellor
Zabriskie that the statute of 43 *Eliz.* is not in force in New Jersey.
In the same case on appeal, 5 *C. E. Gr.* 489, 522, Chief.Justice Beasley
holds that the common law of England means "that system, so far as
respects this question, which has grown up in a series of decisions
founded, in part, upon the 43*d of Elizabeth*, ch. 4."

It is proposed to examine, in this note, whether the statute of char-
itable uses is in force in New Jersey. In determining this, it is neces-
sary to consider some other English statutes, also, that have been
deemed adopted in the United States.

In *Blankard* v. *Galdy*, 4 *Mod.* 222 (A. D. 1693), the Island of Jamaica
was held to be "only an assembly of people who are not bound by our

De Camp v. Dobbins.

of the corporation, or if the trust is collateral to its general purposes, but germane to them; as, if it relates to matters which will promote and aid the general purposes of the corporation. In such case it may take and hold, and be compelled to execute the trust, if it accepts it. *Perry on Trusts*, § 43. The gift in this case is upon a trust within the general scope of the purposes of the institution of the corporation. By its express terms it is to promote the religious interests of the church, and to aid the missionary, educational and benevolent enterprises to which the church is in the habit of contributing. To spread the gospel at home and among the heathen; to promote education, and to contribute to the objects of benevolence, as the word is understood in its popular significance, are regarded as among the appropriate purposes of a Christian church.

It is urged that the corporation to which the gift is made in this case is incapable of taking the residuary property, because of the limitation contained in the law under which it was incorporated restricting the amount of property which it may hold to property not to exceed the annual value of $2,000. If such limitation did, in fact, exist, it would not incapacitate the corporation from taking the gift, although its property, at the time of receiving the gift, was

laws unless particularly mentioned." But see *S. C. Salk.* 411; *Mem.* 2 *P. Wms.* 75.

In *Smith* v. *Brown*, *Salk.* 666 (A. D. 1706), " the laws of England do not extend to Virginia; being a conquered country, their law is what the king pleases." *Holt, C. J.* See *Campbell* v. *Hall, Cowp.* 204.

The rule that the particular colony to be affected must be mentioned, does not apply to those general statutes which relate to the king's prerogative. *McKineron* v. *Bliss,* 31 *Barb.* 180.

It is doubtful whether the position taken by Blackstone (Vol. I, p. 107), that the colonies were to be deemed conquered or ceded countries, is correct. *Story on Const.,* § 151, *et seq.*

The following rules seem to have been generally followed in this country:

(1.) The statute must have been adopted before the settlement of the colony. *State* v. *Mairs, Coxe* 328, note, *Kinsey, C. J.*; *Dalgleisch* v. *Grundy, Cam. & Nor.* (*N. C.*) 22; *McKee* v. *Straub,* 2 *Binn.* (*Pa.*) 1; *Patterson* v. *Winn,* 5 *Pet.* 233, 241, *Story, J.*; *Carter* v. *Balfour,* 19 *Ala.* 814,

De Camp v. Dobbins.

of the full annual value of $2,000. If a corporation takes land by grant or devise, in trust or otherwise, which, by its charter, it cannot hold, its title is good as against third persons and strangers; the state alone can interfere. *Perry on Trusts*, § 45; *Bogardus* v. *Trinity Church*, 4 *Sandf. Ch.* 633; *Wade* v. *Am. Col. Soc.*, 7 *S. & M.* 663. And again, if the limitation did, in fact, exist, the legislature might remove the restriction to permit the corporation to execute the trust or authorize it to receive the gift and administer the trust, notwithstanding the limitation. This court, which will not suffer a trust to fail for want of a trustee, will uphold a trust for a reasonable time, when necessary, in order to enable the trustee to obtain the requisite authority to take and execute it. *Bridges* v. *Pleasants*, 4 *Ired. Eq.* 26, 30; *Inglis* v. *Trustees of Sailors' Snug Harbor*, 3 *Pet.* 115. But, again, the restriction insisted upon does not, in fact, exist. It was removed by the act of 1872, (*P. L.* 1872, p. 101,) which provides that any religious society incorporated, or to be incorporated, under the act under which the corporation which is made trustee in this case was incorporated, may purchase, hold and dispose of any real estate they may deem expedient, provided it shall not be used by the corporation for but one of two purposes, that of having on the

---

829; *Commonwealth* v. *Lodge*, 2 *Gratt.* (*Va.*) 579; *Swift* v. *Tousey*, 5 *Ind.* 196; see *Ludlam* v. *Ludlam*, 26 *N. Y.* 356, 362; *Coburn* v. *Harvey*, 18 *Wis.* 156; *Paul* v. *Ball*, 31 *Tex.* 10.

(2.) It must be applicable to our situation—*e. g.*, the following acts do not extend:

Bankruptcy acts of England. *Vanuxem* v. *Hazelhurst*, 1 *South.* 192, 195; see *Bunny* v. *Hart*, 11 *Moore P. C. C.* 189.

Collateral warranties, 4 *and* 5 *Ann*, c. 16 (A. D. 1706). *Eshelman* v. *Hoke*, 2 *Yeates* (*Pa.*) 509; see *Den* v. *Crawford*, 3 *Hal.* 90.

Benefit of Clergy. *Fuller* v. *State*, 1 *Blackf.* (*Ind.*) 63.

Copyright laws, 8 *Ann*, c. 19 (A. D. 1710). *Wheaton* v. *Peters*, 8 *Pet.* 591, 660.

*Quia emptores*, 18 *Edw. I*, c. 1 (A. D. 1290). *Ingersoll* v. *Sergeant*, 1 *Whart.* 337; *Wallace* v. *Harmstad*, 44 *Pa. St.* 492.

"The Black Act," 9 *Geo. I* (A. D. 1722). *State* v. *Campbell, Charlt.* (*Geo.*) 166.

Maintenance and champerty, 32 *Hen. VIII*, c. 9 (A. D. 1541). *Den*, *Bickham* v. *Pissant*, *Coxe* 220, 223; *Morris* v. *Vanderen*, 1 *Dall.* 64, 67;

De Camp *v.* Dobbins.

premises a building for the worship of God, or for education or the administration of charity to the bodies or souls of men.  The corporation, therefore, is not, in fact, restricted in its ownership of property to that which will not exceed in value $2,000 a year.  It is, however, enough to say on this head, as has been before suggested, that if the corporation exceeds the prescribed amount, though it be by an original purchase, nobody but the state can interfere with the holding of the property which it acquires, and it is a matter of which individuals cannot avail themselves in any way.  *Ang. & Ames on Corp.*, § 151; 2 *Washb. on R. P.*, p. 567; *Att'y-Gen.* v. *Bowyer*, 3 *Ves.* 727; *Vidal* v. *Phila.*, 2 *How.* 191; *Wade* v. *Am. Col. Soc.*, 7 *S. & M.* 663.  It is settled that a forfeiture by a corporation cannot be taken advantage of, or enforced against it collaterally or incidentally, or otherwise than by direct proceedings for the purpose.  *Ang. & Ames on Corp.*, § 777.

It is further urged in this connection that the trust is, by its terms, to be administered not by the corporation, but by the " church officials."  The gift is to the corporation in trust for certain specified purposes, with direction that " said church officials " shall use and dispose of the property at such times and in such manner as they shall deem

---

*Harring* v. *Barwick*, 24 *Geo.* 59; *Sessions* v. *Reynolds*, 7 *Sm. & M.* (*Miss.*) 131; *Schaferman* v. *O'Brien*, 28 *Md.* 565; *Cresinger* v. *Welsh*, 15 *Ohio* 156; *Fetrow* v. *Merriwether*, 53 *Ill.* 275; *Cassedy* v. *Jackson*, 45 *Miss.* 397; *Duke* v. *Harper*, 3 *Cent. L. J.* 288, where many cases are reviewed; 14 *Am. Law Reg.* 78, and note; see *Gregerson* v. *Imlay*, 4 *Blatch.* 503; *Brinley* v. *Whiting*, 5 *Pick.* 347; *Earle* v. *Hopwood*, 9 *C. B.* (*N. S.*) 566, 574, note.

Mortmain, 9 *Geo. II*, c. 36 (A. D. 1736).  *Vidal* v. *Girard*, 2 *How.* 189; *Beall* v. *Fox*, 4 *Geo.* 404; *Potter* v. *Thornton*, 7 *R. I.* 252; *Perin* v. *Carey*, 24 *How.* 465; *Wright* v. *Trustees, etc.*, 1 *Hoff. Ch.* 202; *McCartee* v. *Asylum*, 9 *Cow.* 437, 451; see *Schmucker* v. *Reel*, 61 *Mo.* 592; *Leazure* v. *Hillegas*, 7 *Serg. & Rawle*, 321.

Usury laws, 37 *Hen. VIII*, c. 9 (A. D. 1546).  *Houghton* v. *Page*, 2 *N. H.* 42; see *Rensselaer Glass Co.* v. *Reid*, 5 *Cow.* 587, 609, 635.

Pauper laws.  *Commonwealth* v. *Hunt*, 4 *Metc.* (*Mass.*) 111.

Conspiracy, 33 *Edw. I* (A. D. 1305).  *State* v. *Buchanan*, 5 *H. & J.* (*Md.*) 317; *Commonwealth* v. *Hunt*, 4 *Metc.* (*Mass.*) 111.

Bearing arms, 2 *Edw. III* (A. D. 1329).  *Simpson* v. *State*, 5 *Yerg.* (*Tenn.*) 356.

De Camp v. Dobbins.

expedient to promote the interests before mentioned in the clause. The church officials had not been previously referred to, and it is evident that the testatrix used the words " church officials " instead of, and as synonymous with, the church or corporation ; or rather that she referred to them as the agents of the church.

The question, whether the trust is a legal charity, remains to be considered. The trust is " to promote the religious interests of the said church, and to aid the missionary, educational and benevolent enterprises to which the said church is in the habit of contributing." The law of this state on the subject of charitable uses does not, it has been authoritatively declared, differ from the common law of England on that head, which has grown up in a series of decisions founded in part on the statute of charitable uses, the 43d of *Elizabeth*, ch. 4. *Norris* v. *Thomson's ex'rs*, 5 *C. E. Gr.* 489. The general principle is, that courts of chancery uphold and administer gifts where they are made to particular purposes, which are charitable within the letter and spirit of the statute just referred to, or where they are made to charity generally, if there is a trustee with power to make them definite. The word " charity " has obtained a signification in law, and courts do not uphold or administer trusts

Enrolment act, 27 *Hen. VIII*, c. 16 (A. D. 1536). *Welsh* v. *Foster*, 12 *Mass.* 93, 96 ; *Jackson* v. *Dunsbogh*, 1 *Johns. Cas.* 91, 97 ; see *Patterson* v. *Winn*, 5 *Pet.* 233, 241.

The following have been construed as operative :

*Lex mercatoria.* *Ferris* v. *Saxton*, 1 *South.* 1, 18 ; *Pratt* v. *Eads*, 1 *Blackf.* (*Ind.*) 81 ; *Cook* v. *Renick*, 19 *Ill.* 598 ; *Nash* v. *Harrington*, 2 *Aik.* (*Vt.*) 9 ; *Hudson* v. *Mathews, Mor.* (*Ia.*) 94 ; *Commonwealth* v. *Leach*, 1 *Mass.* 59, 61.

Statute of uses, 27 *Hen. VIII* (A. D. 1536). 1 *Greenl. Cruise* 340, note ; see *Croxall* v. *Sherrerd*, 5 *Wall.* 268, 282 ; *Society* v. *Hartford*, 2 *Paine C. C.* 536 ; *Matthews* v. *Ward*, 10 *G. & J.* (*Md.*) 443, 454 ; *Thompson* v. *Gibson*, 1 *Ohio* 439.

Statute of Gloucester, 6 *Edw. I,.*c. 5 (A. D. 1278). *Sackett* v. *Sackett*, 8 *Pick.* 309, 312 ; see *Moore* ads. *Townsend*, 4 *Vr.* 284 ; *Dawson* v. *Coffman*, 28 *Ind.* 220.

Statute of Merton, 20 *Hen. III* (A. D. 1236). *O'Ferrall* v. *Simplot*, 4 *Iowa* 381 ; *Hopper* v. *Hopper*, 1 *Zab.* 543, 2 *Zab.* 715.

Statute of frauds, 27 *Eliz.* (A. D. 1585). *Cathcart* v. *Robinson*, 5 *Pet.* 264 ; *Brown* v. *Burke*, 22 *Geo.* 574 ; *Den* v. *DeHart*, 1 *Hal.* 450, 457 ; *Mayberry* v. *Johnson*, 3 *Gr.* (*N. J.*) 116, 118 ; *Lindsley* v. *Coats*, 1 *Ohio* 113.

De Camp v. Dobbins.

for particular purposes which are not charitable within the meaning of the law, nor trusts expressed in general words which do not come within the legal signification of the word "charity." *Perry on Trusts,* § 709.

Gifts to charity are favored by our law for the reason for which they were favored by the civil law.

"Since legacies for works of piety and charity," says Domat, "have a double favor, both that of their motive for holy and pious uses, and that of their utility for the public good, they are considered as being privileged in the intention of the law. *Domat,* § 3,591. Both before and since the statute of charitable uses, gifts for the advancement, spread and teaching of Christianity, or for the convenience and support of worship or of the ministry, have been held to be charitable. *Perry on Trusts,* § 701. As has been well remarked by the writer just mentioned, "In a Christian community, of whatever variety of faith and form of worship, there would be little need of a statute to declare gifts for religious uses to be charitable." The church is an organization all of whose objects are within Mr. Justice Gray's definition of charity, in a legal sense. He defines it to be "a gift to be applied consistently with existing laws for the benefit of an indefinite number of persons, either by

---

. CONTRA, *Cleveland* v. *Williams,* 29 *Tex.* 204 ; see *Murphy* v. *Hubert,* 7 *Barr* (*Pa.*) 420 ; *Blackwell* v. *Ovenby,* 6 *Ired.* (*N. C.*) *Eq.* 38.

Fines and common recoveries. *Lyle* v. *Richards,* 9 *S. & R.* (*Pa.*) 322 ; *Richman* v. *Lippincott,* 5 *Dutch.* 44, 50 ; *Croxall* v. *Sherrerd,* 5 *Wall.* 268, 283.

Distresses, 8 *Ann,* c. 14 (A. D. 1710). *Hamilton* v. *Reedy,* 2 *McCord* (*S. C.*) 38 ; *Coburn* v. *Harvey,* 18 *Wis.* 156 ; *Dalgleish* v. *Grundy, Cam. & Nor.* (*N. C.*) 22 ; *Lambert* v. *Dessaussure,* 4 *Rich.* (*S. C.*) *Law* 248 ; *In re Trim,* 2 *Hughes* (*U. S. C. C.*) 355.

Damages from accidental fire, 6 *Ann,* c. 31 (A. D. 1708). *Kellogg* v. *C. & N. W. R. R. Co.,* 26 *Wis.* 223, 272 ; as modified by 14 *Geo. III,* c. 78 (A. D. 1774), *Lansing* v. *Stone,* 37 *Barb.* 15.

Discontinuance by husband of wife's interest in lands, 32 *Hen. VIII,* c. 28 (A. D. 1541). *Bruce* v. *Wood,* 1 *Metc.* (*Mass.*) 542 ; *Coale* v. *Barney,* 1 *G. & J.* (*Md.*) 324.

Westminster the Second, 13 *Edw. I,* c. 34 (A. D. 1285). *Coggswell* v. *Tibbetts,* 3 *N. H.* 41. CONTRA, *Lecompte* v. *Wash,* 9 *Mo.* 551.

Jointure, 27 *Hen. VIII,* c. 10 (A. D. 1536). *Hastings* v. *Dickinson,* 7 *Mass.* 153.

De Camp v. Dobbins.

bringing their hearts under the influence of education and religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves for life, or by erecting and maintaining public buildings or works, or otherwise lessening the burdens of government." "And," he adds, "it is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature." A religious purpose is a charitable purpose. *Baker* v. *Sutton*, 1 *Keen* 224. And a general purpose of promoting Christian knowledge is a good charitable purpose. *Att'y-Gen.* v. *Stepney*, 10 *Ves.* 22.

In *Townsend* v. *Carus*, 3 *Hare* 257, a legacy to trustees upon trust to pay, divide or dispose thereof unto or for the benefit or advancement of such societies, subscriptions or purposes having regard to the glory of God in the spiritual welfare of His creatures, as they should in their discretion see fit, was construed to be a gift for religious purposes, and restricted to such purposes; and it was held, also, that a bequest for a religious purpose is a valid charitable bequest, although the paramount religious object might possibly be effected by an application of part of the fund to a purpose which, separately taken, would not be strictly charitable. And in *Wilkinson* v. *Lindgren*, *L. R.* 5 *Ch. Ap.* 570, where

Attornment, 4 *Ann*, c. 16 (A. D. 1706). *Burden* v. *Thayer*, 3 *Metc.* 76; *Coker* v. *Pearsall*, 6 *Ala.* 542; see *Baldwin* v. *Walker*, 21 *Conn.* 168.

(3.) In aid or amendment of the common law. *Commonwealth* v. *Leach*, 1 *Mass.* 58, 61; *Pearce* v. *Atwood.* 13 *Mass.* 324, 354; *Commonwealth* v. *Knowlton*, 2 *Mass.* 530, 535; *Boynton* v. *Rees*, 9 *Pick.* 528, 531; *Hamilton* v. *Kneeland*, 1 *Nev.* 40; *Gwin* v. *Hubbard*, 3 *Blackf.* (*Ind.*) 14; see *Scott* v. *Lunt*, 7 *Pet.* 596.

As giving an additional remedy, 13 *Edw. I*, c. 11 (A. D. 1285). *Shewell* v. *Fell*, 3 *Yeates* (*Pa.*) 17; *Gwin* v. *Hubbard*, 3 *Blackf.* (*Ind.*) 14; *Plumleigh* v. *Cook*, 13 *Ill.* 669; see *Steere* v. *Field*, 4 *Mason* 486, 511.

As an action of account, 4 *Ann*, c. 16 (A. D. 1706). *Griffith* v. *Willing*, 3 *Binn.* (*Pa.*) 317.

(4.) Or declaratory thereof. *Lynch* v. *Clark*, 1 *Sandf. Ch.* (*N. Y.*) 583; *Hudnal* v. *Wilder*, 4 *McCord* (*S. C.*) 294; *Hamilton* v. *Russel*, 1 *Cranch* 310, 316; *State* v. *Hudson Co.*, 1 *Vr.* 130, 131.

(5.) Or merely cumulative. *Goodwin* v. *Thompson*, 2 *Greene* (*Ia.*) 329; *Commonwealth* v. *Ruggles*, 10 *Mass.* 391; see *Commonwealth* v. *English*, 2 *Bibb* (*Ky.*) 80.

De Camp v. Dobbins.

a testatrix, after giving legacies to certain designated charitable institutions, gave her residuary personal estate to and amongst the different institutions, or to any other religious institutions or purposes, as A and B might think proper, it was held that the bequest of the residue was a good charitable gift, and not void for uncertainty. Gifts for domestic and foreign missions are charitable. *Perry on Trusts*, § 701; *Burr* v. *Smith*, 7 Vermont 241; *Boyle on Charities*, 41; *Shelford on Charitable Uses*, 73. And so are gifts for educational purposes.

It is argued, however, in this case, that the gift in question cannot be maintained as a charity, because the trust is for benevolent as well as for missionary and educational purposes; and it is urged that the doctrine of the case of *Norris* v. *Thomson's ex'rs*, 4 *C. E. Gr.* 308, *S. C. on Appeal*, 5 *C. E. Gr.* 489, is conclusive on this point. The principle on which the decision in that case and those on which it rests, are founded is, that where a trust is in such general terms that the fund may be applied at the discretion of the trustees, not only to purposes strictly charitable according to the settled meaning of the term, but, also, to other indefinite purposes of benevolence or liberality, it is void for the reason that the court cannot direct the application

---

(6.) All statutes for the administration of justice were adopted. *Sibley* v. *Williams*, 3 *G. & J.* (*Md.*)·52; *Pemble* v. *Clifford*, 2 *McCord* (*S. C.*) 31; *Craft* v. *State Bank*, 7 *Ind.* 219.

"Ease and favor," 23 *Hen. VI*, c. 9 (A. D. 1445); *Koons* v. *Seward*, 8 *Watts* (*Pa.*) 388; see *Winthrop* v. *Dockendorf*, 3 *Me.* 156, 161.

Additions to names of defendants in indictments, 1 *Hen. V*, c. 5 (A. D. 1413). *Commonwealth* v. *France*, 2 *Brewst.* (*Pa.*) 568.

Limitations of actions, 21 *Jac. I*, c. 16 (A. D. 1624) does *not* extend here. *Den, Bickham* v. *Pissant, Coxe* 220; *Den, Johnson* v. *Morris*, 2 *Hal.* 6, 11; *Den, Gardner* v. *Sharp*, 4 *Wash. C. C.* 609; *Morris* v. *Vanderen*, 1 *Dall.* 64; *Boehm* v. *Engle*, 1 *Dall.* 15.

CONTRA, *Calvert* v. *Eden*, 2 *H. & McH.* (*Md.*) 290; *Bogardus* v. *Trinity Church*, 4 *Paige* 178, 198.

Costs, 6 *Edw. I*, c. 1 (A. D. 1278). See *Aller* v. *Shurts*, 2 *Harr.* 188.

Bills of exceptions, 13 *Edw. I*, c. 31 (A. D. 1285). See *Colley* v. *Merrill*, 6 *Me.* 50.

The construction of an English statute is adopted with it. *Brown* v. *Burke*, 22 *Geo.* 574; *Fowler* v. *Stoneum*, 11 *Tex.* 478.

As far as the revolution. *Cathcart* v. *Robinson*, 5 *Pet.* 264, 280.

De Camp v. Dobbins.

of any part to charitable uses against the terms of the trust giving an option to the trustees to apply it wholly to other purposes of a different kind. If the character of the gift, however, can be definitely determined, and it appears that it is charitable in the legal sense, the use of terms which would, if unexplained, render the gift void, will not defeat the donor's purpose. As, for example, if a gift were to objects of "liberality" to be mentioned in a codicil to the will, and the objects designated in the codicil were in all respects legal charities, the gift would be good as a charitable gift. Obviously the intention of the donor is of great importance in determining the character of such a trust. "If the intention be charity," says Lord Brougham, "the court will execute it, however vaguely the donor may have indicated his purpose. But mere purposes of a kind generally beneficial, as of those of benevolence and liberality, without specifying the objects who are to receive, and those objects not being the poor, the court will never attempt to execute." *Att'y-Gen.* v. *Haberdashers Co.*, 1 *Myl. & K.* 420.

"I agree," said Lord Eldon, in *Morice* v. *Bishop of Durham*, 10 *Ves.* 522, 542, 543, "there is no magic in words, and if the real meaning of these words (benevolence

---

Decisions as to charities are independent of 43 *Eliz.*, and therefore applicable in Pennsylvania. *Witman* v. *Lex*, 17 *S. & R.* 88, 92, *Gibson, C. J.*

No decisions rendered after July 4th, 1776, are admissible as authority in New Jersey. *Pat.* 436, § 5 (repealed *Rev. Laws* 1821, p. 726); *Crawford* v. *The Wm. Penn*, 3 *Wash. C. C.* 484, 492; see *Hickman* v. *Boffman, Hardin* (*Ky.*) 348, 365.

As to the effect of a general repealer. The constitution of New Jersey of 1776, § 22, provides that the common law of England, as well as so much of the statute law as has been heretofore practiced in the colony, shall still remain in force *till altered by the legislature*, etc.

*Paterson's Rev.* (A. D. 1799), p. 436, § 4, and *Rev. Laws* 1821, p. 726, provide that "no statute or act of parliament of England or Great Britain shall have force or authority within this state or be considered as a law thereof." (Neither *P. L.* 1819, p. 25, nor *Rev. Laws* 1821, p. 726, § 5, repeals this section.)

The reason of this sweeping repealer is, no doubt, correctly stated by Mr. Griffith, that *Paterson's Rev.* contained all such of the English statutes as were supposed to be in force in 1776, 4 *Grif. Reg.* 1155, note.

De Camp v. Dobbins.

and liberality) is charity or charitable purposes according
to the technical sense in which these words are used in this
court, all the consequences follow." In *Attorney-General* v.
*Comber*, 2 *Sim. & Stu.* 93, a gift to the widows and orphans
of a parish was declared by Sir John Leach, V. C., to be
intended for the poor of those two classes of the parish, on
the ground that they are within the scope of general
benevolence, to which sentiment the gift was to be
attributed. In *Jemmit* v. *Verril, Amb.* 585, *note*, where the
residue was given to trustees upon trust to pay, apply, and
dispose of the same unto and for such charitable and
benevolent purposes as G. J., one of the trustees, should
direct, it was ordered by the same judge, notwithstanding
the fact that the word "benevolent" was used in the
description of the purposes to which it was to be applied,
that the residue should be applied as G. J. should point out
by a scheme to be laid before and settled by the master. In
*Dolan* v. *Macdermot, L. R.* 3 *Ch. Ap.* 676, a gift for such
charities and public purposes as lawfully might be in the
parish of T. was held to be a good charitable gift, the court
holding that the testator, by the word "charities," meant
public and not private charities, and that by "public
purposes" he meant public purposes *ejusdem generis, i. e.*,

Under this the following English statutes, among others, have
been abolished: Fines and recoveries, *Croxall* v. *Sherrerd*, 5 *Wall.* 268,
283; the statute *de donis* (13 *Edw. I*, A. D. 1285), *Den, James* v. *Dubois*,
1 *Harr.* 285; and the statute of 21 *Hen. VIII*, c. 4 (A. D. 1530), *Corlies*
v. *Little*, 2 *Gr.* 373, 385.

The statute of uses, 21 *Hen. VIII*, c. 4 (A. D. 1530,) was abrogated by
a similar general repealer in Michigan. *Trask* v. *Green*, 9 *Mich.* 358;
*Ready* v. *Kearsley*, 14 *Mich.* 215.

Also in New York, 11 *and* 12 *Wm. III*, c. 6 (A. D. 1700), *Levy* v.
*McCartee*, 6 *Pet.* 102, 110, *Story, J.*; but statutes (6 *Ann.* 31 and 14
*Geo. III*) which had been recognized as part of the common law, were
held not to be affected. *Lansing* v. *Stone*, 37 *Barb.* 15, 19.

For other constructions of similar provisions, see *Noonan* v. *State*, 1
*Sm. & Marsh* (*Miss.*) 562; *State* v. *Rollins*, 8 *N. H.* 550; *Helfenstine* v.
*Garrard*, 7 *Ohio* 397; *Gorham* v. *Daniels*, 23 *Vt.* 600, 610.

A repealer of "statutes of Great Britain" does not extend to the
statutes of *England*, and was intended to prescribe the union of
England and Scotland [1707] as the period at which the statutes of

public charities of a kind which, though within the statute of *Elizabeth*, and the technical doctrine of the court with regard to charities, are not within the popular meaning of the word charities.

On the other hand, in *Williams* v. *Kershaw*, reported in 5 *Cl. & Fin.* 111, *note*, a direction by a testator to his trustees to apply the residue of his personal estate to and for such benevolent, charitable, and religious purposes as they in their discretion should think most advantageous and benefi- cial, and for no other use, trust, intent or purpose, was held void for uncertainty. In that case, however, the master of the rolls concluded that the testator intended to restrain the discretion of the trustees only within the limits of what was benevolent, charitable, *or* religious. In *Norris* v. *Thom- son's ex'rs*, *ubi sup.*, the doctrine of *Williams* v. *Kershaw* was followed. In *Norris* v. *Thomson's ex'rs*, however, the bequest was to such benevolent, religious, *or* charitable institutions as the testator's widow might select. In the present case the gift is to a church to promote its religious interests, and to aid the missionary, educational, and benevolent enterprises to which it is in the habit of con- tributing. The word "benevolent" in that connection signifies, and undoubtedly was understood by the testatrix

England should cease to operate here. *O'Ferrall* v. *Simplot*, 4 *Iowa* 381 ; see *Reg.* v. *Mallow Union*, 12 *Ir. C. L.* 35.

In several of the states the statute of *Elizabeth* has been repealed by a general repealer of English statutes, or denied recognition as ever having been adopted as a part of the common law.

In Maryland, *Dashiell* v. *Att'y-Gen.*, 5 *Har. & Johns.* 392 ; *Meade* v. *Beale, Taney's C. C. Decis.* 339.

In Virginia, *Gallego* v. *Att'y-Gen.*, 3 *Leigh* 450 ; *Seaburn* v. *Seaburn*, 15 *Gratt.* 423 ; *Baptist Ass'n* v. *Hart*, 4 *Wheat* 1 ; *Wheeler* v. *Smith*, 9 *How.* 79 ; see *Carpenter* v. *Miller*, 3 *W. Va.* 174 ; *Roy* v. *Rowzie*, 25 *Gratt.* 599, 607.

In Tennessee, *Dickson* v. *Montgomery*, 1 *Swan* 348 ; *Frierson* v. *General Assembly*, 7 *Heisk.* 683.

In New York, *Bascom* v. *Albertson*, 34 *N. Y.* 584 ; *Holmes* v. *Mead*, 52 *N. Y.* 332 ; *Ayres* v. *Methodist Church*, 3 *Sandf.* 351, 367 ; *Downing* v. *Mar- shall*, 23 *How. Pr.* 4.

In Wisconsin, *Heiss* v. *Murphey*, 40 *Wis.* 276.

In Indiana, *Grimes* v. *Harmon*, 35 *Ind.* 198.

In Illinois, see *Plumleigh* v. *Cook*, 13 *Ill.* 699.

to signify, "charitable." The courts appear to have been in some cases astute to frustrate the charitable intentions of donors who, meaning to devote their property to uses strictly charitable, have, unfortunately, employed language admitting of a wider scope in the use of the gift than is judicially given to the word charity. It would be far more in accordance with enlightened jurisprudence to exercise in such cases the power of construction so as to effectuate, if possible, the intention of the testator. A latitudinarian interpretation of the words "charity" and "charitable" has been unhesitatingly given in order to effectuate the intention of testators; why should not, for the same purpose, a restricted one be given to the words "benevolence" and "benevolent"? Why may they not be interpreted according to their popular signification, and so be held to mean just what the testator, in the great majority of cases, understands them to mean? "The main and necessary characteristic," says Lord Brougham, "is charitable intent." *Attorney-General* v. *Haberdashers Co.*, *ubi sup*. The meaning of the word "benevolent" in the bequest under consideration, is controlled by the character and purposes of the legatee, in aid of whose interests and enterprises the gift is to be employed. A gift to a charitable institution or society will be presumed to be a charitable gift, though no purpose is named, and such institution or society will be presumed to hold such gifts in trust for those charitable purposes for which it exists. *Everett* v. *Carr*, 59 *Maine* 325; *Evangelical Association's Appeal*, 35 *Pa. St.* 316; *Burr* v. *Smith*, 7 *Verm.* 241; *Earle* v. *Wood*, 8 *Cush.*

In Ohio, *Perin* v. *Carey*, 24 *How.* 465, 497.

In Pennsylvania, *Bethlehem* v. *Perseverance Co.*, 81 *Pa. St.* 445.

In South Carolina, *Att'y-Gen.* v. *Jolly*, 1 *Rich. Eq.* 99, 2 *Strobh.* 379.

CONTRA, *Drew* v. *Wakefield*, 54 *Me.* 291; *Going* v. *Emery*, 16 *Pick.* 107; *Amer. Acad.* v. *Harvard Coll.*, 12 *Gray* 582.

The conclusion is that the 43d *Eliz.*, if ever in operation in New Jersey, was repealed in 1799, since when decisions founded thereon are inapplicable.—REP.

De Camp v. Dobbins.

430; *Dexter* v. *Gardner*, 7 *Allen* 243; *Hendrickson* v. *Decow*, *Sax.* 577.

The gift in this case is to an incorporated religious society, expressly in trust to be used for its religious purposes. The trust expressed that the property shall be employed for the promotion of the religious interests of the church, and in aid of the educational, missionary, and benevolent enterprises to which it is in the habit of contributing, is no more than the law would imply had the terms of the gift been merely in trust for the purposes of the church. In such case the employment of the fund in aid of the missionary, educational, and benevolent enterprises to which the church is in the habit of contributing could not be held to be a misapplication. A gift to a hospital or a college to aid it in its "benevolent" objects, would undoubtedly be a gift to a charitable use, and would be unhesitatingly pronounced to be so. The word "benevolent" would be interpreted to mean charitable. A gift to a missionary society to aid it in its "benevolent" enterprises would, in like manner, be readily conceded to be to a charitable use, and the word "benevolent" would there be held to signify charitable. So, too, when the gift is to a church to promote its religious interests, and to aid it in the missionary, educational, and benevolent enterprises to which it is accustomed to contribute, the word "benevolent" should, if there be necessity for so doing in order to effectuate the donor's intention, be interpreted in the narrow sense in which it was used by him—*i. e.*, as being equivalent to or synonymous with the word "charitable." The word "benevolent," in the case under consideration, should be interpreted according to the context in conformity with the construction adopted in *Jemmit* v. *Verril, Wilkinson* v. *Lindgren*, and *Townsend* v. *Carus*. It is worthy of observation that it is joined to the words "missionary and educational" by the copulative conjunction, and, therefore, is not subject to the objection of indefiniteness, as was the bequest in

*Norris* v. *Thomson's ex'rs.* There the disjunctive was employed.

Again, the purposes to which the gift is to be devoted are not uncertain, but are designated by reference in the will. They are the missionary, educational, and benevolent enterprises to which the church "is in the habit of contributing." What were those enterprises? If they are wholly such as are charitable within the legal signification of the word, the gift is good. Proof has been made of the objects to which the church was, at the time of the death of the testatrix, in the habit of contributing, and they are all charitable. They are either religious, educational, or eleemosynary.

The testatrix was a member of the North Reformed Church from September 21st, 1866, to the time of her death, in or about November, 1873. One of the witnesses testifies that from the organization of the church to the time when he was examined as a witness, which was in August, 1875, the benevolent objects to which the church was accustomed to contribute were Foreign and Domestic Missions, the Church Building Fund, the Tract Society, the Bible Society, the Sabbath Schools of the church, the Female Charitable Society, the Disabled Ministers Fund, and the Widows Fund. All these are charitable, in the legal signification of the word.

Another says that the objects to which the church made contributions every year, during the period of seven years from 1868 to 1875, were Foreign Missions, the Board of Publication, the Newark Female Charitable Society, the Widows Fund, the Tract Society, Domestic Missions, the Bible Society, the Board of Education and Sabbath Schools. Both these witnesses speak from memory. It appears, however, from examination and collation of the list of the contributions for the several years, that the objects to which the church was, at the time when the will was executed, and at the time of the testatrix's death, in the habit of contributing every year, were Foreign and Domestic Missions, the Board of Publication of the Reformed Church, and the Mission

Sunday Schools. No question is made as to the character of these enterprises. It is not denied that they are charitable, in the legal sense of the word. They are all charitable. The church does not appear to have been in the habit of contributing to any enterprises which were benevolent merely, in the wide sense of that term, as contra-distinguished from " charitable " in the legal acceptation. There were other objects of benevolence besides those above-mentioned, using the word " benevolence " in its popular sense, to which the church from time to time contributed, and they, too, were charitable, in the legal acceptation. Those missionary, educational and benevolent enterprises to which it was in the habit of contributing were all " for education or the administration of charity to the bodies or souls of men." Without invoking the aid of the cases in which, when free from the trammels of past adjudication, a judicial construction in accordance with the obvious intention of the testator in the use of the word " benevolent " has been given, as in *Miller* v. *Rowan*, 5 *Cl. & Fin.* 99, where the gift was to benevolent and charitable purposes, with a recommendation to apply it in yearly payments to faithful domestic servants, and *Hill* v. *Burns*, 2 *W. & S. App.* 80, where the gift was to be disposed of in such charitable and benevolent purposes as one of the trustees should direct, and accepting it as a rule that the test of a charity is the ability of this court to execute it, there can be no doubt as to the trust which is now before me. Unlike the cases of *Morice* v. *Bishop of Durham*, 9 *Ves.* 399, 10 *Ves.* 522; *James* v. *Allen*, 3 *Meriv.* 17; *Ellis* v. *Selby*, 1 *Myl. & Cr.* 286; *Kendall* v. *Granger*, 5 *Beav.* 300; *Vezey* v. *Jamson*, 1 *Sim. & Stu.* 69, and *Norris* v. *Thomson's ex'rs*, the intention of the testatrix as to the objects of her bounty cannot be said to be uncertain. Nor is it uncertain whether they were to be such as the law calls charitable.

The gift will be sustained. There will be a decree accordingly.